IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES MUNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11-cv-159-GPM-DGW |
| ) | |
| DONALD GAETZ, JIM WINTERS, SUZANN ) | |
| GRISWOLD-BAILEY, RONALD ) | |
| BROCKHOUSE, DR. FAHIM, DR. ) | |
| FEINERMAN, and DR. FUENTENS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge G. Patrick Murphy pursuant to 28 U.S. C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a) and the Motion for Summary Judgment filed by Defendants, Suzann Griswold-Bailey, Ronald Brockhouse, Donald Gaetz, and Jim Winters, on September 7, 2012 (Doc. 50). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment be **DENIED IN PART and TAKEN UNDER ADVISEMENT IN PART,** that the Court find that Plaintiff has exhausted his administrative remedies, and that the Court adopt the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### BACKGROUND

Plaintiff's three (3) Count Complaint is related to the vegetarian diet that Plaintiff received at the Menard Correctional Center. Plaintiff states that he has Buddhist religious beliefs and that he is a vegetarian based on these beliefs. He alleges, however, that the high "textured vegetable protein"/soy content in his diet at Menard is not nutritionally sufficient and has caused severe digestive problems, pain, significant weight loss, and various other medical ailments.

As outlined by Judge Murphy in his initial screening Order (Doc. 11), Count I alleges that Defendants Griswold (IDOC Dietary Manager), Winters (Menard Food Service Manager), and Brockhouse (Menard Food Service Manager) violated his Eighth Amendment rights by failing to provide a nutritionally adequate vegetarian diet; and, in particular, a diet that is free from unreasonably high amounts of soy protein.

Count II also alleges an Eighth Amendment claim but with respect to the medical care Plaintiff received at Menard. Plaintiff alleges that Defendants Fahim, Feinerman, and Fuentens, all Doctors at Menard, deliberately failed to address his underlying negative reaction to soy in his diet and failed to treat pain caused as a result of his soy-based diet.

Counts III alleges an infringement on free exercise of religion by Defendants Geatz (Menard Warden), Griswold, Winters, and Brockhouse. Plaintiff alleges that he was no longer able to follow a vegetarian diet, a tenet of his religion, because of the toxic quantities of soy.

The pending Motion for Summary Judgment was filed by Defendants Griswold, Brockhouse, Gaetz, and Winters, only. These Defendants argue that Plaintiff failed to exhaust his administrative remedies and that they are entitled to qualified immunity. This Report and

Recommendation will only address the claim that Plaintiff failed to exhaust his administrative remedies.

With respect to exhaustion, Defendants assert that Plaintiff filed five grievances, dated September 4, 2009, January 5, 2010, and April 20, 2010, January 10, 2011, and August 31, 2011 related to the soy content in his diet (in addition to other matters). Of these five grievances, Defendants argue, only the last was exhausted. The last, exhausted, grievance was filed after this lawsuit was filed. In light of Defendants' assertions, this Court held a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (2008), on October 23, 2012 in which Plaintiff appeared by video-conference and Defendants appeared by counsel. The following was determined based on the filings and the hearing:

In Plaintiff's detailed September 4, 2009 grievance, he states that he is a lacto-ovo-vegetarian, that the meals he receives are not adequate because of the high soy content, lack of fresh fruits and vegetables, and the limited time within which to eat, and that he is not receiving adequate medical care (Doc. 50-2, pp. 25-28).[1] Plaintiff states that he received a response from his counselor on September 8, 2009 and he subsequently forwarded the grievance and wrote a letter to the Grievance Office (Doc. 50-3, p. 1). He states that he received no response from the Grievance Office and then sent a letter to Warden Gaetz (*Id.*). Plaintiff's Counselor, James Alms, issued a memorandum to Plaintiff on December 1, 2009 notifying him that the Grievance Office never received a grievance (Doc. 57, p. 60). In a December 23, 2009 response by Assistant Warden Stock, Plaintiff was informed that he was required to forward his grievance to

---

[1] Numerous exhibits have been filed in this case with various labels that repeat document identifiers at the prison level. That is, there are numerous documents labeled "Exhibit B" that would make reference to Exhibit B confusing. For ease of reference, then, the Court will refer only to the document and page numbers generated by CM/ECF.

3

the Grievance Office and not merely a letter (Doc. 50-3, p. 5). The merits of this grievance were not considered any further.

Plaintiff's second grievance, dated January 5, 2010, also complained of the high soy content in his diet and lack of appropriate and nutritious meals (Doc. 57-1, p. 3-7). In his response to the Motion for Summary Judgment, Plaintiff states that this grievance was responded to by his Counselor on February 25, 2010 (Doc. 57, p. 11).[2] In a letter to Assistant Warden Stock, Plaintiff states that he filed this grievance with the Grievance Office on February 25, 2010 (Doc. 57-1, p. 8). In a March 15, 2010 letter from Assistant Warden Stock, Plaintiff was informed that the Grievance Office did not receive this grievance (*Id*. at p. 15). The grievance also was returned to Plaintiff by the Administrative Review Board in a letter dated May 10, 2010 and Plaintiff was instructed to include the Grievance Office's and Counselor's responses (Doc. 50-2, p. 6).

The April 20, 2010 grievance related to the grievance procedure itself (Doc. 57-2, p. 2). Plaintiff's Counselor responded to this grievance on May 20, 2010 (*Id.*). On July 13, 2010, the Administrative Review Board issued a letter to Plaintiff regarding this grievance and stated that he must submit the Grievance Office's response in order for it to be considered (Doc. 57-2, p. 15). On July 14, 2010, the Grievance Office submitted a response which essentially indicated that Plaintiff failed to follow proper procedures and that he should submit material in a timely manner (Doc. 50-4, p. 29). In a subsequent August 19, 2010 letter, the ARB indicated that it

---

[2] The copy of this grievance provided by Plaintiff does not contain a Counselor's response (Doc. 51-1, p. 3). The copy provided by Defendant also does not contain a Counselor's response; however, a note at the end of the hand-copied grievance states "Please allow it to be noted that this grievance is a hand re-written word for word of the grievance of 1/5/10 because I was not able to obtain photocopies from the law library . . . ." (Doc. 50-2, p. 12).

4

was considering Plaintiff's grievance (*Id.* p. 18). There is no indication in the record that the ARB responded to this grievance.

In a January 10, 2011 emergency grievance, Plaintiff again complained about his diet and conditions of confinement (Doc. 50-6, p. 10-13). Plaintiff attached this grievance to a letter to the ARB (*Id.* p. 14). In response, the ARB returned the grievance, telling Plaintiff to acquire his Counselor's and the Grievance Office's responses (*Id.* p. 9).

The final grievance, dated August 31, 2011 (filed after this lawsuit was filed) also related to the soy in his diet (*Id.* p. 17). That grievance was ultimately considered and denied by the institution and the ARB on May 17, 2012 (*Id.*, p. 15-17). There is no dispute that this last grievance was exhausted.

Plaintiff also wrote numerous letters throughout 2010 to the Administrative Review Board, Counselor Alms, Assistant Warden Stock, Warden Gaetz, Illinois Governor Quinn, various third parties, and the Clerk of this Court seeking status updates or complaining of a lack of response to the grievances that he filed.

At the hearing, Plaintiff testified that he can only submit a grievance, to be forward to the Grievance Office, by placing it in the "grievance officer box" or in the bars of his cell to be picked up by his counselor or a correctional officer. Once the grievance leaves his hands, he has no control over whether it reaches its destination. Plaintiff further testified that when he does not receive a response, which he did not on a number of his grievances, he inquires with his counselor and then sends letters and copies of the grievances to the Assistant Warden, the Warden, and, ultimately, the ARB. The Court finds Plaintiff's testimony credible: he attempted to grieve his concerns through the proper procedure but was stymied by the lack of response.

5

## CONCLUSIONS OF LAW

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer

("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

This case does not present a situation where the Plaintiff alleges that he submitted grievances but in fact did not submit them in a timely manner. Plaintiff instead filled out and submitted formal grievances on September 4, 2009 and January 5, 2010 related to the soy content in his diet. He indicates that he received responses from his Counselor and that he submitted the grievances to the Grievance Office by using the appropriate mechanism. The Court finds Plaintiff's testimony credible that he did in fact submit the grievances to the Grievance Office because of the many letters that Plaintiff mailed or submitted to the institution and the ARB. Plaintiff clearly wanted his dietary concerns to be addressed and sought redress from every person possible. The Court further notes that the administrative rules state that the Grievance Office shall provide a recommendation to the CAO who will issue a decision within 2 months of receipt of the grievance. ILL. ADMIN. CODE TIT. 20, § 504.830(d). Plaintiff wrote to both Assistant Warden Stock and Warden Gaetz regarding his grievances – grievances which they would ultimately provide a decision on. Even those inquires did not result in some response from the institution regarding Plaintiff's underlying concern about the soy content in his diet. The rules, moreover, do not spell out what an inmate is to do if no response is given. Defendants also did not explain to the Court what Plaintiff was required to do in order to exhaust his administrative remedies when the institution itself fails to respond to his grievances. The evidence reveals that Plaintiff made his concerns about his diet clear to the very people who would ultimately decide whether his grievance had merit, the Assistant Warden and Warden. That the institution decided to not respond to the merits of Plaintiff's concerns should not count against Plaintiff. Therefore, this Court finds that Plaintiff did exhaust his administrative remedies and that Defendants' Motion for Summary Judgment on this point should be **DENIED**.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment be **DENIED IN PART** as to exhaustion **and TAKEN UNDER ADVISEMENT IN PART** as to the issue of qualified immunity**,** that the Court find that Plaintiff has exhausted his administrative remedies, and that the Court adopt the following findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 4, 2013**

                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**