## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES MUNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 11 -CV-159-NJR-DGW |
| | ) | |
| KIM BUTLER, JIM WINTERS, | ) | |
| SUZANN GRISWOLD-BAILEY, | ) | |
| RONALD BROCKHOUSE, MAGID | ) | |
| FAHIM, ADRIAN FEINERMAN, and FE | ) | |
| FUENTES, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants Suzann Griswold-Bailey, Ronald Brockhouse, Kim Butler,[1] and Jim Winters (Doc. 129), the Motion for Summary filed by Defendants Adrian Feinerman, M.D. and Magid Fahim, M.D. (Doc. 138), the Motion for Summary Judgment filed by Defendant Fe Fuentes, M.D. (Doc. 144), Plaintiff's Motion to Defer Consideration of Defendants' Summary Judgment Motions and/or Motion to Allow Plaintiff Time to Take Discovery Pursuant to Federal Rule of Civil Procedure 56(d) (Doc. 154), and Plaintiff's Renewed Motion for Experts (Doc. 155). For the reasons set forth below, Plaintiff's Motion to Defer Consideration (Doc. 154) is denied, Plaintiff's Renewed Motion for Experts (Doc. 155) is denied, and Defendants' Motions for Summary Judgment (Docs. 129, 138 and 144) are granted.

---

[1] Defendant Kim Butler was substituted for Donald Gaetz, the former Warden of Menard, pursuant to Federal Rule of Civil Procedure 25(d) (*see* Doc. 167).

<u>PROCEDURAL BACKGROUND</u>

Plaintiff James Munson, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit on March 2, 2011, alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). In his complaint, Munson alleges that, as a practicing Buddhist, his religion requires that he adhere to a lacto-ovo vegetarian diet, but, due to the high soy content in this diet at Menard, he has become ill. More specifically, Munson claims that as a result of the high soy content in the lacto-ovo vegetarian diet, his nutritional needs were not being met, and he suffered severe digestive problems, including irritable bowel syndrome and severe stomach pain, for which he was not given any medication. In August 2009, Munson claims he was forced to remove himself from his religious diet because his medical providers refused to put him on a soy free diet.

Following a threshold review of the complaint pursuant to 28 U.S.C. §1915A (*see* Doc. 11), Munson was initially proceeding on the following claims:

Count One: Eighth Amendment claim against Defendants Griswold-Bailey, Winters, Brockhouse, and Gaetz (now Butler) for failing to provide a nutritionally adequate vegetarian diet for Plaintiff.

Count Two: Eighth Amendment deliberate indifference claim against Defendants Fuentes, Feinerman, and Fahim for failing to prescribe Plaintiff a soy-free diet and failing to treat Plaintiff's complaints regarding persistent, severe abdominal pain.

Count Three: First Amendment free exercise claim against Defendants Griswold-Bailey, Gaetz (now Butler), Winters, and Brockhouse for failing to provide a soy- free vegetarian diet.

On July 17, 2013, the Court entered an order finding that Defendants

Griswold-Bailey, Brockhouse, Gaetz (now Butler), and Winters were entitled to qualified immunity on Counts One and Three and dismissed Munson's claims against these Defendants for damages (Doc. 80). The Court indicated, however, that because the defense of qualified immunity does not protect Defendants from an action for injunctive relief, Counts One and Three would remain pending against these Defendants for injunctive relief only (*see* Doc. 80).

In his complaint, Munson seeks the following injunctive relief:

1. That Defendants provide him with a lacto-ovo vegetarian diet that meets or exceeds USDA dietary guidelines, with a minimum of 2,800 calories per day, including three cups of milk, five ounces of whole grains, five servings of fruit, seven servings of vegetables, and 60 grams of "complete" protein per day (Doc. 1, p. 33).

2. That Defendants serve at least one fresh fruit per day, with the same fruit to be served no more than three times per week (Doc. 1, p. 33).

3. That Defendants serve no more than one fruit serving each day in the form of juice (Doc. 1, p. 33).

4. That Defendants serve at least two fresh vegetables each day, with the same vegetable to be served no more than three times per week (Doc. 1, p. 33).

5. That "Textured Vegetable Protein" (TVP/Soy) be removed from the lacto-ovo vegetarian diet (Doc. 1, p. 33).

6. That the last person to receive their meal tray on each feed line in the chow hall be permitted a minimum of fifteen minutes to complete eating after the meal is served (Doc. 1, pp. 33-34).

7. That Defendants provide him with "full blood wor[k]" to see if there are any abnormalities resulting from the TVP/Soy diet (Doc. 1, p. 34).

On October 7, 2013, discovery in this matter was stayed pending the outcome of parallel litigation in the Central District of Illinois, *Harris, et al. v. Brown, et al.*, as the issue

of whether inclusion of soy in IDOC diets violates the Eighth Amendment to the United States Constitution was fully briefed on the parties' motions for summary judgment in that case (Doc. 96). Specifically, the Court noted that the plaintiffs in *Harris* had an attorney and had retained experts in support of their case. Subsequently, on June 2, 2014, this matter was stayed in its entirety pending the outcome of *Harris* (Doc. 104). The stay was lifted on June 15, 2015 (Doc. 116), because the Court in *Harris* had issued a ruling on the pending motions for summary judgment (which is discussed below). Munson was then assigned counsel to represent him in this matter (*see* Docs. 115 and 120).

Defendants Brockhouse, Griswold-Bailey, Butler, and Winters filed a motion for summary judgment on September 28, 2015 (Doc. 129) arguing they are entitled to judgment as a matter of law. Defendants Fahim, Feinerman, and Fuentes also filed motions for summary judgment on the merits on October 9, 2015, and November 11, 2015, respectively (Docs. 138 and 144).

Munson sought, and was granted, extensions of time to respond to Defendants' motions, and he filed his responses on March 6, 2016 (Docs. 151-153). On March 7, 2016, Munson also filed a motion to defer consideration of Defendants' summary judgment motions and/or motion to allow him time to take discovery pursuant to Federal Rule of Civil Procedure 56(d) (Doc. 154) and a renewed motion for experts (Doc. 155), to which Defendants timely objected (Docs. 156, 161). The Court first addresses Plaintiff's Motion to Defer Consideration (Doc. 154) and Renewed Motion for Experts (Doc. 155), and then considers Defendants' Motions for Summary Judgment (Docs. 129, 138, and 144).

<u>D</u><small>ISCUSSION</small>

I.   **Plaintiff's Motion To Defer Consideration Of Defendants' Summary Judgment Motions and/or Motion To Allow Plaintiff Time To Take Discovery Pursuant To Federal Rule of Civil Procedure 56(d) (Doc. 154) and Plaintiff's Renewed Motion For Experts (Doc. 155).**

In his motion to defer consideration, Munson asks the Court to defer ruling on Defendants' motions for summary judgment so that he may conduct discovery and depose Defendants and/or retain experts. Munson argues that he requires additional time to depose Defendants on the following issues: (1) Defendants' deliberate indifference to his continuing health problems; (2) the seriousness of severe and persistent abdominal pain and diarrhea; (3) the ability for Menard to provide him with a soy-free diet; and (4) the continuing nature of his abdominal pain after 2013, when Defendants argue the continuing harm to Munson ceased. Munson also has filed a renewed motion for experts in which he asks the Court to appoint various experts to "better aid in discovery" (Doc. 155-1).

Rule 56 of the Federal Rules of Civil Procedure permits a district court to delay consideration of a summary judgment motion and order additional discovery before ruling if the non-movant demonstrates that "it cannot present facts essential to justify its opposition." F<small>ED</small>. R. C<small>IV</small>. P. 56(d). The Rule places the burden on the non-movant who believes additional discovery is required to "state the reasons why the party cannot adequately respond to the summary judgment motion without further discovery." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014) (quoting *Deere & Co. v. Ohio Gear*, 462 F.3d 701, 706 (7th Cir. 2006)). More specifically, Rule 56(d) requires an affidavit from the non-movant specifically identifying the material facts that it

anticipates discovering. *See Grundstat v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) (finding vague assertions that discovery would develop genuine issues of material fact insufficient to grant continuance).

In response to this motion, Defendants argue that Munson has failed to articulate how the requested additional discovery would create a genuine issue of material fact because Defendants have provided affidavits describing the medical care provided to Munson, as well as the basis for their decisions. Further, Defendants assert that Munson has failed to articulate any basis by which additional information would be needed with regard to their actions in this case.

The Seventh Circuit Court of Appeals has found that "[a] party seeking the protection" of Rule 56(d) "must make a good faith showing that it cannot respond to the movant's affidavits." *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n. 5 (7th Cir. 2000) (quoting *United States v. All Assets and Equip. of W. Side Bldg. Corp.*, 58 F.3d 1181, 1190 (7th Cir. 1995) (citations and footnote omitted)). Munson has failed to make such a showing here. Indeed, Munson has merely indicated a number of issues he would depose Defendants about without any indication of what specific evidence he may obtain from these depositions that would create a genuine issue as to a material fact. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005). Moreover, prior to filing his motion, Munson filed responses to Defendants' motions for summary judgment (*see* Docs. 151-153). Although Munson makes mention of his request for relief pursuant to Rule 56(d) in his responses, he addresses Defendants' statements of material facts and includes additional uncontroverted facts to support his position. Thus, it is unclear what

additional evidence Munson seeks in order to file a response to Defendants' motions. Finally, while the Court acknowledges that counsel for Munson was appointed to this matter in July 2015, just months prior to the filing of dispositive motions (*see* Doc. 120), Munson was granted *three* extensions of time to respond to Defendants' motions. Munson had ample time to seek additional discovery pursuant to Rule 56(d) prior to filing his responses. For these reasons, the motion to defer consideration of Defendants' summary judgment motions and/or motion to allow Plaintiff time to take discovery (Doc. 154) is denied. Similarly, Plaintiff's renewed motion for experts (Doc. 155) is denied.

## II.   Defendants' Motions For Summary Judgment (Docs. 129, 138, and 144).

### A.   Relevant Factual Background

As noted above, Munson is currently an IDOC inmate at Menard. As a practicing Buddhist, Munson prescribed to a lacto-ovo vegetarian diet[2] at Menard from his arrival in February 2003 until August 2009 (Plaintiff's Complaint, Doc. 1, ¶ 28; Doc. 130-1, pp. 7, 37-38, 67). In August 2009, Munson switched to the general prison diet because he was experiencing abdominal cramping and diarrhea, which he asserts was caused by the high soy/textured vegetable protein ("TVP") content in the lacto-ovo vegetarian diet (Doc. 130-1, pp. 67-68). At his deposition, Munson testified that he began complaining to physicians at Menard that the soy content in his diet was causing his abdominal pain and cramping around of the end of 2008 or sometime in 2009 (*Id.* at p. 30).

Preceding his complaints about his lacto-ovo vegetarian diet, Munson

---

[2] Munson describes his lacto-ovo vegetarian diet as a diet that includes eggs and dairy products, along with vegetables, but no meat (*see* Doc. 130-1, pp. 66-67).

complained about stomach pains in March 2007 (Plaintiff's Medical Records, Doc. 138-4, p. 21). On March 22, 2007, Munson was examined by Defendant Dr. Feinerman regarding his stomach pain, and Defendant Feinerman ordered an ultrasound of Munson's abdomen (Doc. 138-5, p. 1). The ultrasound was completed on April 4, 2007, and it revealed the presence of multiple gallstones (*Id.* at p. 4). On April 12, 2007, Defendant Feinerman held a collegial review in which he obtained approval for Munson to receive a surgical evaluation regarding the removal of gallstones (Affidavit of Dr. Adrian Feinerman, Doc. 138-2, ¶ 9; Doc. 138-5, p. 15). Munson received an evaluation at Kenneth Hall Regional Hospital in East St. Louis, Illinois, on May 8, 2007 (Doc. 138-5, pp. 18-20). The physician who conducted the examination, Dr. Patricia Clark, noted that Munson's pain was consistent with peptic ulcer disease, and she explained to Munson that his gallstones may not be the cause of his abdominal discomfort; however, Dr. Clark indicated that it was reasonable to remove Munson's gallbladder (*Id.* at p. 19). Defendant Feinerman obtained approval for the removal procedure on May 16, 2007 (Doc. 138-2, ¶ 12; Doc. 138-5, p. 21), and Munson underwent the procedure on June 7, 2007 (Doc. 130-1, p. 28; Doc. 138-6, p. 11; Doc. 138-7, pp. 1-4).

Following the gallbladder procedure, Defendant Feinerman saw Munson regularly at hypertension and HIV clinics (*see* Doc. 138-9, pp. 3-4, 18-19; Doc. 138-10, pp. 7-8, 14-15; Doc. 138-11, p. 19). Defendant Feinerman asserts that, from the date of the gallbladder procedure to September 2009, he never saw Munson for complaints concerning abdominal pain, alleged soy intolerance, soy allergy, or abdominal cramping (Doc. 138-2, ¶ 15). Munson contends, however, that shortly after the removal of his

gallbladder, he complained to Defendant Feinerman that he was continuing to suffer from severe abdominal pain and diarrhea (Affidavit of James Munson, Doc. 151-1, ¶13). Munson asserts that Defendant Feinerman ignored his complaints, stating that he should not be having any pain because his gallbladder had been removed (Doc. 130-1, p. 23; Doc. 151-1, ¶ 14). A review of Munson's medical records indicates that Munson complained of abdominal pain on one occasion on December 11, 2007, when he was seen by a medical technician (Doc. 138-8, p. 11). Munson also was examined by a nurse on December 17, 2007, and the medical record notes that Munson complained of pain in the left side of his stomach "since given wrong medications" (*Id.* at p. 12). Munson saw Defendant Feinerman on January 9, 2008, and the medical record notes that Munson's medications were discussed; however, Defendant Feinerman indicated that he decided not to change any medications (*Id.* at p. 13). Defendant Feinerman ultimately changed Munson's HIV medications later in 2008, prescribing Truvada, Reyataz, and Ritonavir (Doc. 130-1, pp. 46-50; Doc. 138-10, p. 14). These medications indicate that common side effects include diarrhea, nausea, and abdominal pain (Doc. 130-1, pp. 48-51; Doc. 138-2, ¶ 23).

Munson attests that he had an appointment with Defendant Dr. Fuentes on August 18, 2009, and at that time he advised Dr. Fuentes about his continuing and severe abdominal pain and diarrhea (Doc. 151-1, ¶ 38). According to Munson, Defendant Fuentes refused to provide him with any medication to treat his abdominal pain and dismissed his belief that soy was causing his issues, taking no steps to assist him and instead recommending that Munson "buy food from the store" (*Id.* at ¶¶ 39-41).

Defendant Fuentes also advised Munson that there was nothing she could do for him "because all of the food served at the prison contained soy, although there was significantly more soy in the vegetarian diet" (*Id*. at ¶ 42).

Munson submitted nurse sick call requests on September 16 and September 21, 2009, complaining about abdominal pain (Doc. 138-12, pp. 10-11), and he was seen by a nurse on September 22, 2009 (*Id.* at p. 12). Munson was referred to a physician and saw Defendant Fuentes on September 25, 2009 (*Id.* at p. 13). During this examination, Munson indicated he had been experiencing abdominal pain on his left side for more than six to eight months and indicated he had not had solid stools for about two months (Affidavit of Dr. Fe Fuentes, Doc. 144-1, ¶ 7; Doc. 138-12, p. 13). Defendant Fuentes noted that Munson had a history of HIV, removal of his gallbladder, and a previous lab test showing elevated H. pylori[3] in 2007 (*Id.*). After a physical examination, Defendant Fuentes noted minimal tenderness in Munson's abdomen, but she was unsure of the cause (Doc. 144-1, ¶ 7). Accordingly, Defendant Fuentes ordered an H. pylori test and provided Munson with a prescription for Tylenol and Bentyl, a medication traditionally used for individuals with irritable bowels (Doc. 144-1, ¶ 7; Doc. 138-12, p. 13). The lab results indicated that Munson's H. pylori levels were 0.9, which is considered a negative/normal finding (Doc. 144-1, ¶ 8; *see* Doc. 138-12, p. 14). Munson asserts that he "constantly" asked Defendant Fuentes for a soy-free diet, but she always refused, instructing him to buy food from the commissary (Doc. 130-1, p. 20). Munson did not provide any additional detail as to when he made these requests for a soy-free diet.

---

[3]  H. pylori is a bacterium that causes chronic inflammation (infection) in the stomach and duodenum and is a common contagious cause of ulcers. Charles Patrick Davis, *H. pylori (Helicobacter Pylori) Infection*, MedicineNet.com, http://www.medicinenet.com/helicobacter_pylori/article.htm.

Subsequently, on October 30, 2009, Munson saw Defendant Dr. Fahim for his regular hypertension and HIV clinics (Doc. 138-12, p. 22; Doc. 138-13, p. 1). The records indicate that at the HIV clinic Defendant Fahim prescribed Munson Imodium and ordered that he receive a rectal exam follow-up in three weeks, indicating Munson had some degree of abdominal or gastrointestinal complaints at the time (Affidavit of Dr. Magid Fahim, Doc. 138-1, ¶ 3; *see* Doc. 138-13, p. 1). Munson complains that, at this appointment, Defendant Fahim refused to provide him with any medication to treat his abdominal pain, and the Imodium that was prescribed to address Munson's complaints of diarrhea only made his abdominal pain worse (Doc. 151-1, ¶ 21). More generally, Munson asserts that the treatment provided by Defendant Fahim was inadequate because he was prescribing medication that caused him to suffer side effects and, eventually, his pain started to worsen (Doc. 130-1, pp. 21-22).

Munson next saw Defendant Fuentes on November 4, 2009, to assess his complaints of back pain (Doc. 144-1, ¶ 9; Doc. 138-13, p. 2). There is no indication in the medical records that Munson complained of abdominal pain or cramping or diarrhea at this appointment (*see* Doc. 138-13, p. 2). Munson asserts, however, that he did tell Defendant Fuentes about his abdominal pain and diarrhea at this appointment, and Defendant Fuentes advised Munson that the Imodium being prescribed would increase his abdominal pain (Doc. 151-1, ¶¶ 44-45). On November 30, 2009, Munson was examined by Defendant Fahim to assess his complaints of abdominal cramping (Doc. 138-13, p. 3). Defendant Fahim conducted a physical examination and noted mild tenderness in Munson's lower abdomen (Doc. 138-1, ¶ 4; Doc. 138-13, p. 3). Defendant

Fahim, concerned that Munson may be suffering from irritable bowel syndrome, prescribed Metamucil, one to two packets per day, and ordered that he be scheduled for gastrointestinal testing, including a sigmoidoscopy (*Id.*). According to Munson, Defendant Fahim again refused to provide any medication for his abdominal pain at this appointment (Doc. 151-1, ¶ 23). Munson was seen by Defendant Fahim on December 28, 2009, for a follow-up appointment regarding his complaints of abdominal pain and cramping (Doc. 138-1, ¶ 5; Doc. 138-13, p. 10). Again, Defendant Fahim conducted a physical examination and found no obvious signs of discomfort (*Id.*). Defendant Fahim maintained his belief that Munson may be suffering from irritable bowel syndrome, so he continued Munson's prescription for Metamucil and Flexeril, ordered Prednisone, and again referred him for a sigmoidoscopy (*Id.*). Munson asserts that at this appointment he specifically stated his concern that the soy-based prison diet was causing his abdominal pain and diarrhea, to which Defendant Fahim suggested that Munson quit eating soy, but then rescinded the recommendation (Doc. 151-1, ¶¶ 25-26). Again, Munson asserts that Defendant Fahim refused to provide any medication to treat his complaints of abdominal pain (*Id.* at ¶ 27). According to Munson, Defendant Fahim continued to refuse to provide medication for his abdominal pain at his appointments on January 22, 2010, and July 28, 2010 (*Id.* at ¶¶ 28-32). Munson also attests that in 2010 he asked Defendant Fahim to order him a soy-free diet, but Dr. Fahim refused to do so (*Id.* at ¶ 33).

Munson was seen by a medical technician on March 15, 2010, for complaints of hemorrhoids and abdominal pain (Doc. 138-14, pp. 1-2). He was referred to a physician

for evaluation of his condition (*Id.*). On March 25, 2010, Defendant Fahim noted that Munson was approved for a colonoscopy to evaluate whether he may have irritable bowel syndrome (*Id.* at p. 3) and, on April 14, 2010, Defendant Fahim entered an order for Munson to begin his colon prep once his colonoscopy was scheduled (Doc. 138-1, ¶ 7; Doc. 138-14, p. 13). Munson next saw Defendant Fahim on April 19, 2010, for his regularly scheduled hypertension and HIV clinics; at that time, Defendant Fahim renewed Munson's prescription for Prednisone and ordered suppositories for him (Doc. 138-1, ¶ 8; Doc. 138-14, pp. 14-15). On April 22, 2010, Munson underwent an upper endoscopy and colonoscopy (Doc. 138-1, ¶ 9; Doc. 144-1, ¶ 11; Doc. 138-14, p. 18). The results were normal, with no signs of irritable bowel or other significant abnormality (*Id.*).

Following his colonoscopy, Munson was again seen by a medical technician for complaints of diarrhea on May 20, 2010 (Doc. 138-15, p. 1). Munson was referred to a physician, and Defendant Fahim saw him on May 24, 2010 (*Id.* at p. 2). At this appointment, Defendant Fahim informed Munson that his colonoscopy results were normal, and he conducted a physical examination, noting that Munson's abdomen was soft with normal bowel sounds and no reported tenderness (Doc. 138-1, ¶ 10; Doc. 138-15, p. 2). The medical records note that Munson was prescribed Metamucil and Imodium (Doc. 138-15, p. 2); however, Munson asserts that the medication was not continued by Defendant Fahim, but rather, was continued by Dr. Leyland Thomas (*see* Doc. 152, p. 6).

On June 30, 2010, Munson was evaluated by Defendant Fuentes for complaints of

abdominal pain in his right-upper abdomen (Doc. 144-1, ¶ 12; Doc. 138-15, p. 8). Defendant Fuentes conducted a physical examination of Munson that did not reveal any tenderness or masses in his abdomen (Doc. 144-1, ¶ 12). Defendant Fuentes also reviewed Munson's recent blood testing, which did not reveal any obvious abnormalities that would be a suspected cause of abdominal pain (Doc. 144-1, ¶ 12; *see* Doc. 138-15, p. 8). In light of these findings, Defendant Fuentes assessed Munson as suffering from unspecified abdominal pain and ordered Bentyl for five days; he also ordered that Munson be referred for a panel of blood testing (Doc. 144-1, ¶ 12; *see* Doc. 138-15, p. 8). Munson underwent various blood tests on June 30, 2010 (*see* Doc. 138-16, pp. 2-6). On October 28, 2010, Munson saw Defendant Fahim during his regular HIV clinic (Doc. 138-1, ¶ 12; Doc. 138-16, p. 20). Defendant Fahim continued Munson's HIV medication and also performed an evaluation of his abdominal discomfort (Doc. 138-1, ¶ 12; *see* Doc. 138-16, p. 20). Although Munson's abdomen was soft and there were no noted abnormalities, Defendant Fahim ordered a five month prescription of Metamucil based on Munson's report that it improved his symptoms (Doc. 138-1, ¶ 12; Doc. 138-16, p. 20).

During the hypertension clinic on December 28, 2010, Defendant Fahim again prescribed Metamucil for Munson, increasing both the amount and duration, given his continuing complaints of diarrhea (Doc. 138-1, ¶ 13; Doc. 138-17, p. 9). The medical records indicate that Munson discussed a diet alternative with Defendant Fahim on January 3, 2011, but Defendant Fahim indicated there was not a diet alternative without soy (Doc. 138-17, p. 11). Munson again saw Defendant Fahim on April 26, 2011, to

follow-up on his complaints of abdominal pain and diarrhea (Doc. 138-1, ¶ 15; Doc. 138-18, p. 16). Munson reported that his diarrhea had improved with increased Metamucil (Doc. 138-1, ¶ 15; Doc. 138-18, p. 16). Accordingly, finding that Munson's abdomen was soft and that there were no masses or abnormalities, Defendant Fahim assessed Munson as having controlled chronic diarrhea and continued his prescription for Metamucil for one year (Doc. 138-1, ¶ 15; Doc. 138-18, p. 16).

Following this examination, Munson continued to complain about abdominal pain, but he was seen by other medical personnel, including Dr. Nwaobasi and Dr. Shepherd (neither of whom is a defendant in this action) (*see* Doc. 138-19, pp. 4, 12, 17-21; Doc. 138-20, p. 13; Doc. 138-21, pp. 5-6). There is no evidence before the Court that Munson saw Defendants Feinerman, Fuentes, or Fahim regarding his complaints of abdominal pain or diarrhea following the examination on April 26, 2011.

At his deposition, Munson testified that he began complaining about his soy diet and explaining that it was his belief that it was causing his abdominal pain, cramping, and diarrhea near the end of 2008 or sometime in 2009 (Doc. 130-1, pp. 29-30). Munson came to this conclusion based on his experience, testifying that several times when he quit eating all soy he did not have a problem (Doc. 130-1, pp. 32, 53). As Munson asserts that the lacto-ovo vegetarian diet was causing his stomach issues, he switched to a regular diet in August 2009 (*Id.* at pp. 37-38). Although Munson still suffers from diarrhea and stomach cramps from "time to time," he testified that he tries to stay away from soy food and continues using Metamucil, which lessens his diarrhea (*Id.* at p. 24). In attempting to avoid soy, Munson testified that he trades soy-products from the regular

diet tray for more vegetables, which do not contain soy (*Id.* at pp. 70-71). Munson also purchases items, such as snack cakes, rice, noodles, and refried beans from the commissary (*Id.* at p. 34). Munson attests that he has not suffered abdominal pain or diarrhea after ingesting food items from the commissary (Doc. 151-1, ¶ 10).

Finally, with regard to the other defendants who are employed by the IDOC, Munson testified that he brought suit against Defendant Griswold-Bailey because she prepared the IDOC's lacto-ovo vegetarian menu that Munson complains has too much soy and TVP and provides inadequate calories to maintain the proper health of an active adult male (Doc. 130-1, p. 79; Doc. 1, p. 12). Munson also indicated he brought suit against Defendant Winters and Defendant Brockhouse because they removed foods from the IDOC issued menus, made inappropriate substitutions of food items and reduced portion sizes, resulting in nutritionally inadequate meals (Doc. 130-1, pp. 76-77; Doc. 1, pp. 13-14). Finally, Munson brought suit against Defendant Gaetz (now Butler) alleging that he does not allow adequate time for inmates receiving the lacto-ovo vegetarian diet to eat their meals (Doc. 1, pp. 15, 29; *see* Doc. 130-1, p. 81).

### B.    Legal Standard

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Sols., Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in

genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

## C.    Analysis

*Count One*

Count One asserts an Eighth Amendment deliberate indifference claim against Defendants Griswold-Bailey, Winters, Brockhouse, and Gaetz (now Butler) for failing to provide Munson a nutritionally adequate vegetarian diet.[4] More specifically, Munson alleges that Defendant Griswold-Bailey, the dietary manager for the IDOC, issued a lacto-ovo vegetarian diet menu that provided inadequate calories for an active adult male and is nutritionally deficient in that it includes harmful amounts of soy. Munson also alleges that Defendants Winters and Brockhouse, food service managers at Menard, altered the vegetarian diet trays by eliminating certain food items and reducing portion

---

[4]  As mentioned above, Plaintiff is proceeding on this claim only for purposes of securing injunctive relief.

sizes, and Defendant Butler, the Menard Warden, provided insufficient time for Munson to consume his meals when he received a vegetarian tray. Defendants Griswold-Bailey, Winters, Brockhouse, and Butler assert they are entitled to judgment as a matter of law on this claim because (1) Munson's requests for injunctive relief are barred by the Eleventh Amendment, (2) Munson cannot show that Defendants have exhibited deliberate indifference to his health with regard to the issues related to his diet, and (3) Munson cannot meet his burden for the issuance of a permanent injunction.

Although the Eighth Amendment prohibits "cruel and unusual punishment" of a prisoner, not all prison conditions trigger Eighth Amendment scrutiny. *James v. Milwaukee Cty.*, 956 F.2d 696, 699 (7th Cir. 1992). Only conditions of confinement that deny an inmate of "basic human needs" or "the minimal civilized measure of life's necessities," such as food, medical care, or sanitation, violates the Eighth Amendment. *Id.*; *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996). In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court indicated that courts evaluating claims of unconstitutional conditions of confinement must consider: (1) whether the defendant prison officials acted with the requisite state of mind (the subjective component), and (2) whether the alleged deprivations were sufficiently serious to rise to the level of a constitutional violation (the objective component). In other words, to establish his Eighth Amendment claim, Munson must show that he was subjected to conditions that denied him "the minimal civilized measure of life's necessities" *and* that Defendants acted with a culpable state of mind. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[A] prison official may be held liable under the Eighth

Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.") (other citations omitted)).

To survive summary judgment, an inmate seeking an injunction must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so. *Farmer*, 511 U.S. at 846-46 (quotation and citation omitted). The inmate also must demonstrate the continuance of that disregard during the remainder of the litigation and into the future. *Id.* at 846. If the Court finds the Eighth Amendment's subjective and objective requirements satisfied, it may grant appropriate injunctive relief. *Id.* (citation omitted).

With regard to the objective component, while the Eighth Amendment entitles prisoners to humane conditions of confinement that provide for their "basic human needs," *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), it does not require prison officials to provide inmates with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTeela*, 255 F.3d 470, 472 (7th Cir. 2011) (citations omitted). Notably, a number of courts have recently rejected claims similar to Munson's by inmates of penal institutions who claim that their soy-rich diet

put them at a serious risk of harm. For example, in *Harris v. Brown,*[5] Judge Baker determined that "society today simply does not see soy protein as a risk to the general population, much less a serious risk." 07-CV-3225, 2014 WL 4948229, *4 (C.D. Ill. Sept. 30, 2014). Indeed, Judge Baker pointed out that the federal government still allows food manufacturers to claim health benefits on food labels for foods containing at least 6.25 grams of soy protein per serving. *Id.* at *4. (citation omitted). Observing this fact, and after considering various expert reports regarding the health effects of soy, the court in *Harris* concluded that "[t]oday, serving soy to prisoners could not be considered cruel and unusual punishment as a matter of law" and the "most than can be said is that the safety of soy is a topic of current debate and study and has been for some time." *Id.* at *4-5. *See also Riley-El v. Godinez*, No. 13-C-8656, 2015 WL 4572322 (N.D. Ill. July 25, 2015); *Adams v. Talbor*, No. 13-2221-JES-JAG, 2013 WL 5940630 (C.D. Ill. Nov. 6, 2013); *Johnson v. Randle*, No. 10-cv-135-MJR-SCW, 2012 WL 1964996 (S.D. Ill. May 31, 2012).

The Court finds this reasoning persuasive. While Munson asserts that the soy in his lacto-ovo vegetarian diet caused him to suffer from gastrointestinal issues, including diarrhea and stomach cramps, the Court finds that the objective component has not been met in this case, particularly in light of the fact that there is no evidence as to what amount of soy Munson actually consumed. And there is likewise no evidence that Munson's abdominal complaints were caused by the ingestion of soy, that he suffers from a soy allergy, or that he has a medical condition in which soy is contraindicated. The Court also finds Munson's assertion that the high soy content of the lacto-ovo

---

[5] As mentioned above, this matter was stayed pending the outcome of *Harris v. Brown* because the Court found that *Harris* involved the same issue of whether inclusion of soy in IDOC diets violates the Eighth Amendment (Doc. 104).

vegetarian diet is directly related to his gastrointestinal issues disingenuous because Munson testified at his deposition that he still suffers from diarrhea and stomach cramps, even though he has not been receiving the lacto-ovo vegetarian diet trays since 2009 (Doc. 130-1, p. 24).

Similarly, the Court finds that Munson's more general claims related to the nutritional inadequacy of the lacto-ovo vegetarian diet, including the substitution or removal of food items, reduction of portion sizes, and insufficient meal times, fail to rise to the level of a constitutional violation. While Munson testified about these occurrences at his deposition and referenced them in his complaint, his allegations, even when taken at face value, do not amount to a constitutional deprivation. Specifically, Munson asserts that milk on the lacto-ovo vegetarian diet was removed from the menu one or two days each week, that only one carton of juice is served at breakfast each morning, when the IDOC menu calls for two cartons to be served, peanut butter was deleted from the lacto-ovo vegetarian menu, on one occasion boiled potatoes were substituted for red beans and rice, and bananas, oranges, fresh tomatoes, bell peppers, soup, cheese toast, potato chips, and sherbet are not provided on the lacto-ovo vegetarian diet, even though these items are included on the IDOC master menu (Doc. 1, pp. 13-15). Munson does not indicate what items, if any, were provided as substitutions.

Munson premises his complaints on the fact that the lacto-ovo vegetarian diet does not comport with USDA guidelines. Notably, prisons are not required to comply with USDA guidelines to comport with the Eighth Amendment. Further, these is no evidence before the Court that the provisions Munson was served on the lacto-ovo

vegetarian diet caused him any physical harm; he contends his gastrointestinal complaints are squarely related to the soy/TVP in the meals at Menard, and there is no evidence that Munson has lost any weight or suffered any adverse health consequences as a result of smaller portions, food substitutions, or short meal times.

Moreover, the Court finds that Munson cannot survive summary judgment on his Eighth Amendment claim for injunctive relief because there is no evidence that he is currently being subjected to the harm alleged in his complaint. In other words, Munson has failed to demonstrate the continuance of any disregard to his health since he began receiving a regular diet tray in August 2009. *See, e.g.*, *Sierakowski v. Ryan*, 223 F.3d 440, 444-45 (7th Cir. 2000) (where statute allowed physician discretion to test patient for HIV without his knowledge or consent, prospects of future testing were too speculative for injunctive relief); *Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993) (finding prisoner who complained about restraints used while in segregation unit lacked standing for injunctive relief because he was no longer in segregation unit, even though the possibility existed that he would return to the unit someday).

While Munson argues that there is an ongoing violation of his constitutional rights sufficient to warrant injunctive relief because he continues to experience abdominal pain and diarrhea, this argument misses the mark. Munson's complaints, and his attendant requests for injunctive relief, relate to the lacto-ovo vegetarian diet at Menard. It is undisputed that since August 2009, Munson removed himself from the lacto-ovo vegetarian diet, opting instead to receive the regular diet. Regardless of his reasons for discontinuing the lacto-ovo vegetarian diet, the fact remains that Munson no

longer prescribes to this diet, and he has provided no evidence that his complaints regarding the diet continue to date. Thus, his requests for injunctive relief are moot. For these reasons, Defendants Griswold-Bailey, Winters, Brockhouse, and Butler are entitled to judgment as a matter of law as to Count One.

### Count Two

In Count Two, Munson is proceeding on an Eighth Amendment deliberate indifference claim against Defendants Fuentes, Feinerman, and Fahim for failing to prescribe him a soy-free diet and failing to treat his complaints regarding persistent, severe abdominal pain. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on this claim, Munson must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that

has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner also must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, a plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence … and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 526, 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

In this case, Defendants do not dispute that Munson's medical

condition—chronic abdominal cramping and diarrhea—may constitute a serious medical need.[6] Indeed, the Court finds that a layman would find this condition to be worthy of comment or treatment by a medical professional and, in this instance, Munson regularly sought treatment. The Court's inquiry does not end there, however, because the Court also must find sufficient evidence that Defendants were deliberately indifferent to Munson's medical condition in order for his claims to survive summary judgment.

### Defendant Dr. Feinerman

Defendant Dr. Feinerman asserts he is entitled to summary judgment on the Eighth Amendment deliberate indifference claim because he provided comprehensive and extensive medical treatment appropriate to treat Munson's gastrointestinal complaints. The Court agrees.

At his deposition, Munson explained that he filed this lawsuit against Defendant Feinerman because Dr. Feinerman failed to "push the issue" and find out what was causing his abdominal complaints and because he failed to prescribe pain medication. Notably, Munson is not alleging that Defendant Feinerman wholly ignored his request for medical assistance; rather, Munson asserts that the treatment provided by Dr. Feinerman was inadequate to treat his medical condition and complaints. The evidence, when viewed in a light most favorable to Munson, reveals that Munson regularly sought

---

[6]  The Court notes that in the introductory paragraphs to their motions for summary judgment Defendants assert that Plaintiff did not suffer from a serious medical need (Doc. 138, pp. 1-2; Doc. 144, p. 1); however, in their argument section, Defendants indicate that "[f]or purposes of this motion, [they] do not dispute that abdominal pain, cramping, and diarrhea can constitute a serious medical need" (Doc. 138, p. 16; Doc. 144, p. 12). Because Defendants make no argument to the contrary, the Court finds that Defendants have conceded, for the purposes of their motions for summary judgment, that Munson's medical complaints can constitute a serious medical need.

treatment and was examined by Defendant Feinerman, as well as other on-site and outside physicians, for complaints concerning his abdominal pain and cramping and diarrhea. More importantly, the medical records establish that Defendant Feinerman first saw Munson regarding his abdominal complaints in March 2007 and, after completing a physical examination, Defendant Feinerman ordered an ultrasound of Munson's abdomen that was completed on April 4, 2007. After receiving the results of the ultrasound, Defendant Feinerman sought a referral to an outside specialist for evaluation of gallstones that were identified in the ultrasound. Subsequently, Defendant Feinerman obtained approval for a surgical procedure to remove the gallstones, and the procedure was completed on June 7, 2007. Following Munson's gallbladder procedure, Defendant Feinerman saw him regularly for hypertension and HIV clinics. There is no indication in the medical records that Munson complained of abdominal pain or cramping or diarrhea during these visits, even though Munson asserts that he made such complaints. Munson makes no mention of any particularities concerning his complaints or the response to them, however, relying instead on the general attestation that after his gallbladder was removed, he complained to Defendant Feinerman that "he continued to suffer from severe abdominal pain and diarrhea," and Dr. Feinerman "did not attempt to diagnose or treat [his] severe abdominal pain at any time after [his] gall bladder surgery in 2007" (Doc. 152-1, ¶¶ 13-18). There is no dispute that Munson did not receive any treatment from Defendant Feinerman after September 2009.

While Munson clearly disagrees with the treatment provided by Defendant Feinerman and was frustrated with the ineffectiveness of the gallbladder removal

procedure to ameliorate his abdominal complaints, it is well-established that a prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was "blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996))). Making such a showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain v Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

There is no evidence that Defendant Feinerman's prescribed course of treatment was "blatantly inappropriate." Instead, the evidence demonstrates that Defendant Feinerman examined Munson to assess his abdominal complaints and referred him for an evaluation and removal of his gallbladder to address his complaints. Although this procedure was apparently unsuccessful in alleviating Munson's symptoms, the medical records do not indicate that the lack of success was the result of Defendant Feinerman's deliberate indifference. Moreover, Munson's assertions that he continued to complain to Defendant Feinerman about his abdominal issues following his gallbladder procedure are unavailing because these assertions, even when taken at face value, fail to

demonstrate deliberate indifference; they are void of any detail characterizing how many complaints he made to Dr. Feinerman and the substance of those complaints. Finally, insofar as Munson complains that Dr. Feinerman failed to prescribe a soy-free diet or now infers that he should have been tested for a soy allergy (despite failing to make any such allegation in his complaint), there is no indication in the record that Munson complained about the soy in his diet to Defendant Feinerman or requested a soy-free diet from this defendant. For these reasons, the Court finds that Defendant Feinerman's treatment of Munson was reasonable, and Defendant Feinerman was not deliberately indifferent to Munson's complaints concerning his abdominal issues, nor was he deliberately indifferent in failing to prescribe a soy-free diet for him.

### Defendant Dr. Fuentes

Defendant Dr. Fuentes contends she is entitled to summary judgment on the Eighth Amendment deliberate indifference claim because she appropriately treated his medical concerns. Again, the Court agrees.

At his deposition, Munson testified that he named Defendant Fuentes in this lawsuit due to his belief that she should have provided him pain medication and better treatment than that which was provided. The evidence before the Court establishes that on August 18, 2009, Munson complained about abdominal pain and diarrhea and was examined by Defendant Fuentes. Dr. Fuentes refused to provide Munson with any pain medication and dismissed his assertion that his complaints were being caused by soy, advising him to "buy food from the store" and stating that all food served at the prison contains soy. Approximately one month after this encounter, on September 25, 2009,

Munson's medical records indicate that he saw Dr. Fuentes again for similar complaints. At that time, Defendant Fuentes conducted a physical examination and, although noting only minimal tenderness in Munson's abdomen, prescribed Tylenol and Bentyl (a medication used to treat individuals with irritable bowels) for him, and ordered an H. pylori test. The results of the H. pylori test came back normal. Munson continued seeing Defendant Fuentes, as well as other physicians and medical personnel at Menard for his complaints over the next eighteen months. With regard to Defendant Fuentes specifically, the medical records indicate that Munson was examined by Dr. Fuentes on two occasions for complaints of abdominal pain and diarrhea from November 2009 to June 2010, at which time Defendant Fuentes ordered and reviewed various blood tests and provided Munson with a prescription for Bentyl. Munson asserts that the medical treatment he received on these occasions was inadequate and amounted to deliberate indifference because he was not provided with treatment for his abdominal pain and, although Munson told Defendant Fuentes that he believed his medical condition was caused by the soy in his diet, she failed to ascertain whether he suffered from a soy allergy.

Similar to his complaints concerning Defendant Feinerman, Munson clearly disagrees with the treatment provided by Defendant Fuentes. Specifically, Munson complains that he was not provided with pain medication, was not provided with a diagnosis for his condition, and was not tested for a soy allergy. Munson's complaints amount to dissatisfaction with Defendant Fuentes's prescribed course of treatment, not deliberate indifference. As mentioned above, dissatisfaction "does not give rise to a

constitutional claim unless the medical treatment was 'blatantly inappropriate.'" *Pyles*, 771 F.3d at 409 (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes*, 95 F.3d at 592)). Making this showing is not easy as "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain*, 512 F.3d at 894-95 (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising her professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

Here, there is again no evidence that Defendant Fuentes's prescribed course of treatment, although apparently more conservative than Munson would like, was "blatantly inappropriate." Rather, the evidence demonstrates that Defendant Fuentes examined Munson to assess his abdominal complaints and, finding only minimal or no tenderness in his abdomen and no other obvious abnormalities, provided treatment Defendant Fuentes deemed appropriate—mainly Bentyl and additional blood work in an attempt to ascertain a diagnosis. While Defendant Fuentes did not provide pain medication following every examination, this occurrence does not, by definition, amount to deliberate indifference because medical professionals need not dispense medication on demand. Further, Defendant Fuentes attests that, in her medical opinion, Munson's complaints of abdominal pain and diarrhea were not consistent with a soy allergy as she would expect to see a rash, hives, tingling or pain in the area of the mouth, tongue,

throat, or stomach if an allergy was present (Doc. 144-1, ¶ 20). Accordingly, Defendant Fuentes would have not had reason to test Munson for a soy allergy, and diagnostic tests, and the decision to forego them, is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Defendant Fuentes is entitled to rely on her professional judgment in providing a treatment regimen and making a determination as to the necessity of certain treatments and medications so long as it does not go against accepted professional standards. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012) (citation omitted).

For these reasons, the Court finds that no reasonable jury could conclude that Defendant Fuentes acted with deliberate indifference to Munson's medical condition because she conducted physical examinations of his abdomen, prescribed medication to treat his condition, and ordered blood testing to ascertain the cause of the condition. Further, no reasonable jury could conclude that Defendant Fuentes acted with deliberate indifference in failing to prescribe Munson a soy-free diet; it was her professional medical opinion that Munson was not suffering from a soy allergy, and there was no indication that the soy in his diet was causing his abdominal complaints.

### Defendant Dr. Fahim

Defendant Dr. Fahim asserts he is entitled to summary judgment on the Eighth Amendment deliberate indifference claim because he provided appropriate treatment for Munson's medical condition that was based on reasonable medical judgment. The Court agrees with Defendant Fahim.

At his deposition, Munson articulated that he named Defendant Fahim as a

defendant in this lawsuit because Dr. Fahim failed to provide medication to stop his cramps and diarrhea and the medication he did prescribe caused other side effects. Munson also testified that he filed suit against Defendant Fahim because the colonoscopy test he referred him for was delayed, and he did not change his diet. Again, similar to Munson's complaints lodged against Dr. Feinerman and Dr. Fuentes, Munson is not alleging that his abdominal complaints were wholly ignored by Defendant Fahim; rather, Munson contends that the treatment provided by Dr. Fahim was inadequate to address his complaints and his medical condition.

The evidence before the Court does not support Munson's contention. To the contrary, the evidence, when viewed in a light most favorable to Munson, reveals that he regularly sought, and received, treatment from Dr. Fahim for complaints concerning his abdominal cramping and pain and diarrhea from approximately October 2009 until July 2010. In particular, the Court notes that Defendant Fahim saw Munson at least *eight* times during this time period to assess his condition. More importantly, the medical records demonstrate that Dr. Fahim not only saw and examined Munson regularly, but the records also indicate that Defendant Fahim prescribed Imodium and Metamucil for Munson on various occasions and referred him for an upper endoscopy and colonoscopy (for which the test results were normal). Importantly, Munson testified at his deposition that the Metamucil that was prescribed by Defendant Fahim caused his bowels to move less frequently, thereby improving his condition.

While the Court acknowledges Munson's complaints that Defendant Fahim failed to provide him medication to adequately treat his abdominal pain (apparently

conceding that Defendant Fahim did provide medication to attempt to treat his diarrhea) or provide him with a soy-free diet, the Court again notes that it is well-established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was 'blatantly inappropriate.'" *Pyles*, 771 F.3d at 409 (citing *Greeno*, 414 F.3d at 654 (quoting *Snipes*, 95 F.3d at 592)). Making this showing is not easy because "[a] medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" *Pyles*, 771 F.3d at 409 (quoting *Sain*, 512 F.3d at 894-95 (other quotation omitted)). In other words, federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. *Pyles*, 771 F.3d at 409 (citations omitted).

There is no evidence that Defendant Fahim's prescribed course of treatment was "blatantly inappropriate." The evidence demonstrates that Defendant Fahim examined Munson multiple times, referred him for diagnostic tests (which did not identify any abnormalities), and provided medication he deemed appropriate to treat his complaints. Importantly, Dr. Fahim did not doggedly persist in a course of treatment that was ineffective; he prescribed different medications depending on Munson's complaints (*i.e.* Metamucil, Flexeril, Prednisone, and Imodium), and he increased the dosage of Metamucil based on Munson's assertion that it helped to decrease the frequency of his bowel movements. While Munson clearly disagrees with the course of treatment

prescribed, his disagreement does not amount to deliberate indifference. Further, insofar as Munson complains that he was not provided with sufficient diagnostic tests to determine the cause of his condition, including a soy allergy test, diagnostic tests, and the decision to forego further testing, is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Defendant Fahim is entitled to rely on his professional judgment in providing a treatment regimen and making a determination as to the necessity of certain treatments and medications so long as it does not go against accepted professional standards. *See Holloway*, 700 F.3d at 1074 (citation omitted). Here, the Court finds no indication that Defendant Fahim's treatment of Munson's condition was in contravention of professional standards.

For these reasons, no reasonable jury could conclude that Defendant Fahim acted with deliberate indifference to Munson's medical condition. Defendant Fahim conducted physical examinations of Munson's abdomen, prescribed medication to treat his condition, and ordered various diagnostic tests to ascertain the cause of the condition. Further, no reasonable jury could conclude that Defendant Fahim acted with deliberate indifference in failing to prescribe Munson a soy-free diet because he is entitled to rely on his professional medical opinion to determine what tests should be provided to Munson based on his described symptoms and complaints.

***Count Three***

Count Three asserts a First Amendment free exercise claim against Defendants Griswold-Bailey, Gaetz (now Butler), Winters, and Brockhouse for failing to provide a

soy free vegetarian diet.[7]  Under the First Amendment, prisoners enjoy a right to the free exercise of their religion. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). A prison may, however, impose restrictions on the exercise of religion that are reasonably related to the legitimate penological objectives of the state. *Tarpley v. Allen Cty., Ind.*, 312 F.3d 895, 898 (7th Cir. 2002) (citations omitted). In determining whether an asserted justification is rationally related to a legitimate penological objective, courts consider whether there are alternative means of exercising the right that remain open to the inmate, the impact an accommodation of the asserted right would have on guards and other inmates, and whether there are "obvious alternatives" to the restriction. *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

Munson's free exercise claim is premised on the fact that he was forced to choose between receiving adequate nutrition and practicing the tenets of his faith. In other words, Munson asserts that he was forced to remove himself from the lacto-ovo vegetarian diet that complies with his faith because of the high soy content of the diet. Notably, this claim does not allege that there was an affirmative restriction imposed on Munson that interfered with the practice of his religion (*i.e.* that he was denied a lacto-ovo vegetarian diet), but rather, Munson seems to be asserting that the amount of soy included in the lacto-ovo vegetarian diet constructively restricted his ability to abide by the dietary requirements of his religion due to the effect the consumption of soy had on his health. The Court is unaware of, and the parties have failed to point to, any case

---

[7]  Defendants' motion for summary judgment and Plaintiff's response describe this claim as a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); however, the Court's screening order makes no reference to RLUIPA and discusses this claim in the context of the First Amendment. Accordingly, the Court only considers Count Three as a First Amendment claim, in accordance with the screening order (*see* Doc. 11).

finding that such a constructive restriction amounts to a First Amendment violation in this Circuit. The Court notes that it finds *Wells-Bey v. Kopp*, a decision from the District of Maryland relied on by Munson to support his argument, unpersuasive. Civil Action No. ELH-12-2319, 2013 WL 1700927 (D. Md. Apr. 16, 2013). In *Wells-Bey*, the court denied the defendants' motion for summary judgment on the plaintiff's First Amendment claim finding that the record before the court was not clear as to whether the plaintiff had an egg allergy that made the lacto-ovo diet inappropriate for him. *Id.* Here, Munson has provided nothing more than sheer conjecture that his abdominal issues are caused by the soy in the lacto-ovo vegetarian diet or a soy allergy (which was never mentioned in the complaint). Indeed, Munson has admitted that he still suffers from diarrhea and abdominal cramping despite removing himself from the lacto-ovo vegetarian diet. Moreover, Defendants Fuentes and Feinerman, physicians who regularly examined and treated Munson, attest that Munson's complaints are not consistent with a soy allergy (Doc. 138-2, ¶ 19, Doc. 144-1, ¶ 19). Defendant Feinerman specifically attested that in his opinion, to a reasonable degree of medical certainty, Munson's complaints were related to a number of issues, including peptic ulcer disease, gallstones, and side effects of his HIV medication (Doc. 138-2, ¶ 18). Simply put, the connection Munson is attempting to make between the soy content of the lacto-ovo vegetarian diet and any infringement on his religious beliefs is too tenuous for the Court to find any basis for a First Amendment violation.

Because there is no evidence that Defendants Griswold-Bailey, Butler, Winters, and Brockhouse imposed a restriction on Munson's exercise of his religion, these

Defendants are entitled to judgment as a matter of law as to Count Three.

C O N C L U S I O N

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Suzann Griswold-Bailey, Ronald Brockhouse, Kim Butler, and Jim Winters (Doc. 129) is **GRANTED**; the Motion for Summary filed by Defendants Adrian Feinerman, M.D. and Magid Fahim, M.D. (Doc. 138) is **GRANTED**; the Motion for Summary Judgment filed by Defendant Fe Fuentes, M.D. (Doc. 144) is **GRANTED**; Plaintiff's Motion to Defer Consideration of Defendants' Summary Judgment Motions and/or Motion to Allow Plaintiff Time to Take Discovery Pursuant to Federal Rule of Civil Procedure 56(d) (Doc. 154), and Plaintiff's Renewed Motion for Experts (Doc. 155) are **DENIED**.

This action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff, and close this case on the Court's docket.

**IT IS SO ORDERED.**

DATED:   September 13, 2016

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**