## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES MUNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:11-CV-159-MAB |
| | ) | |
| JAMES KELLER, MAGID FAHIM, | ) | |
| ADRIAN FEINERMAN, FE FUENTES, | ) | |
| JEREMY KOHN, and | ) | |
| DEANNA BROOKHART, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER[1]

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motions for summary judgment

---

[1] The Court is docketing both a public redacted version of this Order and a sealed version. Plaintiff previously filed a sealed motion for protective order outlining why he believed certain information should be kept confidential (Doc. 188), which the Court subsequently granted (Doc. 189). While Plaintiff provides a plethora of reasons for the secrecy he has requested, the most compelling to this Court is the significant threat the disclosure of this information poses to his safety and security as an inmate in the IDOC (*see* Doc. 188 and accompanying Affidavit of Plaintiff). The Court is mindful that "*dispositive* documents in any litigation enter the public record notwithstanding any earlier agreement." *Baxter Int'l, Inc. v. Abbott Lab'ys*, 297 F.3d 544, 546 (7th Cir. 2002). But in this instance, the Court does not believe any of the information that is redacted is dispositive of the case or underpins the ultimate outcome. *Id.* at 545 (documents that influence or underpin the judicial decision are open to public inspection "unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality"). Rather, the information is confidential medical information that is not central to the case, but which serves as important background information. The Court endeavors to abide by the guidance provided by the Seventh Circuit that secrecy is strongly disfavored and that any request for it must be closely and carefully scrutinized. *Id. See also Mitze v. Saul*, 968 F.3d 689 (7th Cir. 2020); *City of Greenville, Ill. v. Syngenta Crop Prot., LLC*, 764 F.3d 695 (7th Cir. 2014); *Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009); *Union Oil Co. of California v. Leavell*, 220 F.3d 562 (7th Cir. 2000); *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893 (7th Cir. 1994). Here, the redactions are minimal and necessary in light of the information Plaintiff has provided (*see* Doc. 188), and the Court believes its approach is consistent with the dictates of the Court of Appeals on this subject. *See Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("This means that both judicial opinions and litigants' briefs must be in the public record, if necessary in parallel versions—one full version containing all details, and another redacted version with confidential information omitted.").

filed by Defendants Magid Fahim, Adrian Feinerman, and Fe Fuentes ("the medical Defendants") (Doc. 248) and Defendants James Keller and Jeremy Kohn ("the IDOC Defendants") (Doc. 254). For the reasons explained below, both motions are granted.

## BACKGROUND

James Munson, an Illinois inmate who is a practicing Buddhist, sued prison officials, asserting that a soy-based diet was harmful to his health, in violation of the Eighth Amendment, and also restricted his religious practice, in violation of the Religious Land Use and Institutionalized Persons Act of 2000. 42 U.S.C. § 2000cc–1(a)(1) & (2).

The Court previously granted summary judgment to Defendants on Munson's claims and dismissed the case (Doc. 190). However, Munson appealed to the Seventh Circuit Court of Appeals and prevailed (Doc. 191-1). Specifically, the Seventh Circuit held that the district court abused its discretion by staying discovery pending resolution of a similar case being adjudicated in the Central District of Illinois, *Harris v. Brown*, No. 3:07-cv-03225, 2014 WL 4948229 (C.D. Ill. Sept. 30, 2014), and then later denying Munson's Rule 56(d) motion. The the combined practical effect of those rulings was that Munson was treated as if he were bound by the results of the *Harris* litigation of the soy-diet issue (Doc. 191-1). The judgment was vacated and the case remanded so that Munson could conduct his own discovery and respond more fully on the merits to the motions for summary judgment (*Id.*).

On remand, new counsel was recruited for Munson, (Docs. 195, 196, 197, 198), who then filed an amended complaint on September 23, 2019 (Doc. 204; Doc. 217).

In the amended complaint, Munson asserts the following claims:

> **Counts 1 & 2:** Claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the First Amendment against Defendants Keller, Kohn, and Brookhart for substantially burdening Munson's free exercise of his religious beliefs by refusing to provide him with a soy-free lacto-ovo diet;
>
> **Count 3:** Eighth Amendment claim against Defendants Adrian Feinerman, Magid Fahim, and Fe Fuentes for exhibiting deliberate indifference to his complaints of abdominal pain and other gastrointestinal issues by refusing to test him for a soy allergy or intolerance or place him on a soy-free diet.

Munson requested a permanent injunction ordering the IDOC Defendants to provide him with a soy-free lacto-ovo vegetarian diet (Doc. 217). And he seeks compensatory damages against the medical Defendants for their purported deliberate indifference (*Id.*).

The parties were given five months to conduct discovery (Doc. 241) and then Defendants once again moved for summary judgment. Doctors Feinerman, Fahim, and Fuentes filed their motion for summary judgment on October 1, 2020 (Doc. 248; *see also* Docs. 249, 250). Defendants James Keller and Jeremy Kohn filed theirs on October 9, 2020 (Doc. 254; *see* also Docs. 251, 252, 253). Munson filed a combined response in opposition to both motions for summary judgment (Docs. 257, 258). The medical Defendants filed a reply brief (Doc. 263) but the IDOC Defendants did not.

## FACTS

Munson has been incarcerated in the IDOC since 1991 (Docs. 250, 253, 258). He was housed at Menard Correctional Center from February 2003 through February 2017. He was transferred to Lawrence Correctional Center in February 2017.

Dr. Adrian Feinerman was employed as the Medical Director at Menard from

December 2005 through January 2010 (Doc. 138-2, p. 1; Doc. 250, p. 2). Dr. Fe Fuentes was employed as a physician at the Menard Correctional Center from June 2, 2008 through July 17, 2015 (Doc. 138-3, p. 1; Doc. 250, p. 5). Dr. Magid Fahim was employed by Wexford Health Sources, Inc. as the Medical Director at Menard Correctional Center from September 29, 2009 through August 19, 2011 (Doc. 138-1, p. 1; Doc. 250, p. 6).

James Keller[2] has been the Food Service Administrator for the IDOC since September 2017 (Doc. 253-3, p. 5). He oversees the food service department, ensures that the department follows policies and procedures, assists with procurement, and oversees the implementation of things within the operation (*Id.* at p. 6). Jeremy Kohn has been the Food Service Program Manager at Lawrence Correctional Center since April 2019 (Doc. 253-7, pp. 4–5).

The IDOC has "master menus" that were created by a dietician to comply with the religious and therapeutic diets and to provide sufficient calories for the inmates (Doc. 253-3, p. 6). The master menus are used state-wide at all of the facilities (*Id.* at p. 11). James Keller testified that the religious and therapeutic diets utilize the master menu for the general diet but then apply the necessary restrictions and make substitutions as necessary (Doc. 253-3, p. 14). For example, on the vegetarian diet, soy protein is generally used in place of meat (Doc. 258-2). If inmates on the general diet were getting a Sloppy Joe, then

---

[2] Munson originally named Suzann Griswold-Bailey, in her official capacity, as the Food Service Manager for the IDOC and Lisa Kittle, in her official capacity, as the Food Service Program Manager for Lawrence Correctional Center (Doc. 204; Doc. 208). Plaintiff then found out that that Griswold-Bailey had been replaced by James Keller and Kittle had been replaced by Jeremy Kohn. Consequently, Keller and John were substituted in as Defendants in place of Griswold-Bailey and Kittle, pursuant to Federal Rule of Civil Procedure 25(d) (Doc. 209).

the inmates on the vegetarian diet would also get a Sloppy Joe made with soy protein instead of meat (*Id.*).

Requests for a religious diet must be approved by the chaplain, and then the food service program manager at the facility makes sure the inmate receives the modified diet (Doc. 253-3, p. 10; Doc. 253-7, p. 7). A therapeutic diet, on the other hand, is a prescription written by a physician in the healthcare unit and coordinated with the food services program manager at the facility (Doc. 253-3, pp. 9–10; Doc. 253-7, p. 7). Generally speaking, special diets are not written or honored for inmates with food sensitivities or intolerances; rather, the inmate is educated on how to avoid the problematic foods (Doc. 253-2, p. 6). However, if an inmate had a food allergy or sensitivity to a major food group or avoiding the allergen compromised their nutritional status, then the agency medical director and agency food service administrator must be consulted and a special diet can be written to accommodate the inmate's individual needs (Doc. 253-2, p. 6; Doc. 253-3, pp. 18–19; Doc. 258-13). This is the process that would need to be followed if a physician ordered a soy-free diet for an inmate, as there is no master menu for soy allergies and no prisoners in the IDOC are currently on a soy-free diet (Doc. 253-3, pp. 14, 16, 18–19; Doc. 253-7, p. 17; Doc. 258-13).

Munson is a practicing Buddhist and part of his faith is to abstain from eating meat (Doc. 258-1). He began receiving a lacto-ovo-vegetarian diet in 2000 in accordance with his religious beliefs (*Id.*; Doc. 217, p. 3). The lacto-ovo-vegetarian diet is a form of a vegetarian diet that does not include meat, poultry, or fish, but includes milk, milk products, and eggs (*see* Doc. 253-2, p. 4). On this diet, meat is substituted with other

sources of protein, such as beans, peas, legumes, tofu, meat analogues made from soy protein, eggs, and limited amounts of nuts, seeds, and nut butter (*Id.*). James Keller testified that soy protein is a "major portion" of the lacto-ovo-vegetarian diet because "that is the protein that's utilized in vegan diets almost universally" (Doc. 253-3, p. 26; Doc. 258-12). Jeremy Kohn testified that soy protein, meaning a product made with textured vegetable protein, is served "probably twice a day" on the lacto-ovo-vegetarian diet (Doc. 258-11).

In 2007, Munson began having gastrointestinal issues, including abdominal pain, diarrhea, bloating, and excessive gas (Doc. 258-1; Doc. 253-4). He believes these issues were related to his consumption of soy. He said he eventually noticed his gastrointestinal symptoms occurred shortly after eating a food item high in soy (Doc. 258-1). And the symptoms stopped when he avoided soy (Doc. 253-4).

On March 2, 2007, Dr. Adrian Feinerman saw Munson for appointments in the hypertension chronic clinic and the ▉ clinic (Doc. 138-4, pp, 10–11). Munson complained at this time about stomach pains (*see id.*; Doc. 250-1, pp. 17–19). The medical records suggest that he apparently believed he was having a recurrence of H. pylori,[3] which is a type of bacteria that can infect your stomach (*see* Doc. 138-4, pp. 9, 13). Dr. Feinerman testified that H. pylori causes peptic ulcers and common symptoms include a

---

[3] Helicobacter pylori (H. pylori) is a bacteria that can infect your stomach and cause peptic ulcers. Signs or symptoms of an H. pylori infection include an ache or burning pain in the abdomen, nausea, loss of appetite, frequent burping, bloating, and unintentional weight loss. MAYO CLINIC, *Helicobacter pylori infection*, https://www.mayoclinic.org/diseases-conditions/h-pylori/symptoms-causes/syc-20356171 (last visited Sept. 17, 2021).

burning sensation, like heartburn, belching, and pain after eating (Doc. 250-1, pp. 16–19). Given that Munson was treated with antibiotics for elevated H. pylori in February 2007, Dr. Feinerman ordered an H. pylori test to determine if Munson's levels were still problematic (Doc. 138-4, pp. 10–11, 18; Doc. 250-1, pp. 17–19; *see also* Doc. 138-2, p. 1).

Dr. Feinerman followed-up with Munson on March 22, 2007 (Doc. 138-2, p. 2; Doc. 138-5, p. 1; Doc. 250-1, pp. 28–29). The H. pylori results were in range but at the highest level. Dr. Feinerman ordered an ultrasound of Munson's abdomen. The ultrasound was done on April 4th and revealed multiple gallstones (Doc. 138-2, p. 2; Doc. 138-5, p. 4; Doc. 250-1, pp. 30–31). According to Dr. Feinerman, gallstones can cause abdominal pain, nausea, vomiting, and fatty-food intolerance (Doc. 250-1, pp. 30–31). Dr. Feinerman saw Munson eight days later, on April 12th, at his regularly scheduled clinic appointments (Doc. 138-2, p. 2; Doc. 138-5, pp. 13–15; Doc. 250-1, pp. 34–35). He examined Munson's abdomen, which showed some tenderness in the right upper quadrant. Given that finding coupled with the ultrasound results, Dr. Feinerman decided to refer Munson for a surgical evaluation, which was approved.

Munson was evaluated on May 8, 2007 by Dr. Patricia Clark (Doc. 138-2, p. 2; Doc. 138-5, pp. 18-20). He told Dr. Clark that the pain he was experiencing was the same as when he previously had H. pylori. Dr. Clark noted that Munson's pain was consistent with peptic ulcer disease,[4] and she explained to Munson that his gallstones may not be

---

[4] Dr. Feinerman stated in an affidavit that peptic ulcer disease is a disease that results in painful sores or ulcers in the lining of the stomach (Doc. 138-2, pp. 2–3). There is no single cause, but physicians agree that it is the result of an imbalance between digestive fluids in the stomach and can be caused by the presence of H pylori bacteria, excessive use of non-steroidal anti-inflammatory medication, excessive use of alcohol

the cause of his abdominal discomfort; however, Dr. Clark indicated that it was reasonable to remove Munson's gallbladder since it was not functioning normally. Dr. Feinerman obtained approval for the gallbladder surgery on May 16, 2007, (Doc. 138-2, p. 3; Doc. 138-5, p. 21), and Munson had his gallbladder removed on June 7, 2007 (Doc. 138-2, p. 3; Doc. 138-7, pp. 1-4). On July 6, 2007, at a chronic clinic appointment, Munson informed Dr. Feinerman that he felt better since his gallbladder was removed. (Doc. 138-7, pp. 11–12; Doc. 250-1, pp. 42, 71).

Dr. Feinerman saw Munson again on September 21, 2007, after Munson had mistakenly been given Depakene, a seizure medication, for 11 days that was not prescribed to him (Doc. 138-8, pp. 2, 3; Doc. 250-1, pp. 43–44, 72). Munson reported that he "[did] not feel well", and he complained of the urge to pee and left side abdominal pain. Dr. Feinerman testified that abdominal pain is a common side effect of Depakene Dr. Feinerman ordered laboratory testing, which showed no abnormalities.

Dr. Feinerman saw Munson a number of times throughout 2008 and during the first part of 2009 for regularly scheduled clinic appointments, as well as for a bout of pneumonia (Doc. 138-8, p. 13; 138-9, pp. 3, 4, 10, 11, 18, 19; Doc. 138-10, pp. 7–8, 14–15; Doc. 138-11, pp. 8, 10–11, 19). It appears that Dr. Feinerman saw Munson for the last time in mid-2009 (*see* Doc. 138-11, p. 19; Doc. 138-12, p. 7). None of the notes from Dr. Feinerman's visits with Munson post-September 2007 memorialize any complaints about abdominal pain or cramping or an alleged soy intolerance or allergy (Doc. 138-2, p. 3;

---

or smoking, or another serious illness.

Doc. 250-1, p. 81; *see also* Doc. 138-8, p. 13; 138-9, pp. 3, 4, 10, 11, 18, 19; Doc. 138-10, pp. 7–8, 14–15; Doc. 138-11, pp. 8, 10–11, 19; Doc. 138-12, p. 7). And Dr. Feinerman testified that he did not recall ever having a conversation with Munson about a soy allergy or a soy-free diet (Doc. 250-1, p. 63). Additionally, Munson underwent a routine physical with another physician in July 2008, and the notes do not contain any reports about abdominal pain or a soy allergy (Doc. 138-9, p. 21; Doc. 138-10, p. 1; Doc. 250-1, pp. 76–77). Notably, Dr. Feinerman changed Munson's ▮▮ medication regimen in 2008, prescribing ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Doc. 138-9, pp. 3, 19). These medications indicate that common side effects include diarrhea, nausea, and abdominal pain (Doc. 130-1, pp. 48-51; Doc. 138-2, ¶ 23).

Dr. Feinerman opined, to a reasonable degree of medical certainty, that Munson's complaints of abdominal pain during the time Feinerman was his treating physician, were due to a number of issues, including peptic ulcer disease, gall stones, and side effects of his ▮▮ medication (Doc. 138-2, p. 4; Doc. 250-1, pp. 70–71). Dr. Feinerman further testified that Munson's complaints of abdominal pain were never consistent with a soy allergy as he did not present with a rash, hives, tingling in the mouth, weight loss, etc. (Doc. 138-2, p. 4; Doc. 250-1, p. 70). Similarly, Munson purchased many foods at the commissary that contain soy, which also suggests that he did not have a soy allergy or intolerance (Doc. 250-1, pp. 75–80, 82–83).

Munson saw Dr. Fe Fuentes for the first time on March 31, 2009, where she noticed that Munson appeared jaundiced (Doc. 138-11, p. 18; Doc. 138-12, p. 10; Doc. 144-1, p. 1; Doc. 250-2, pp. 8–9). He requested to have hepatitis testing, which Dr. Fuentes ordered

and came back normal. There is no indication in the medical records that Munson complained of abdominal pain or mentioned concerns about soy.

Munson removed himself from the lacto-ovo diet in August 2009 (Doc. 258-1). He claims he made this decision due to his ongoing gastrointestinal issues and advice from Dr. Fuentes that he should avoid eating soy-based foods due to his health issues and instead purchase foods from the commissary (Doc. 258-1). However, there are no medical records that reflect such advice from Dr. Fuentes or even that Munson had ever seen Dr. Fuentes about stomach pain by that point (*see* Doc. 138-11, Doc. 138-12). And Dr. Fuentes denied ever giving Munson this advice (Doc. 250-2, pp. 31–32). Defendants say that after Munson removed himself from the lacto-ovo diet, he went to a Kosher diet (Doc. 250, p. 6; Doc. 253, p. 3; *see also* Doc. 1, p. 159). Munson, however, says he went back to the "general diet" and began eating meat again to stop the pain and gastrointestinal issues and still get enough to eat (Doc. 258-1; Doc. 258, p. 8). (Munson says he did not go on a Kosher diet until 2016 (Doc. 258-1)). Munson claims that he received less soy-based food items on the general diet but would still be served soy-based food items on occasion, which caused him the same pain, bloating, and other gastrointestinal issues (Doc. 258-1). He did not offer any details on what these food items were or how frequently they were served (*see id.*).

In September 2009, Munson sent at least two medical request slips seeking treatment for stomach pain and gastrointestinal issues, which he thought were related to soy food (Doc. 1-29, pp. 2, 4). This is the first documented evidence of complaint about soy, despite Munson's testimony that he began complaining to physicians at Menard that

the soy content in his diet was causing his abdominal pain and cramping in "roughly the end of 2008, 2009" (Doc. 130-1, p. 30). On September 23rd, Munson was seen at sick call by a medical technician ("med tech"), where he complained of abdominal pain on his left side for the past two to three months and bowel movements five times a day (Doc. 138-12, p. 12). Notably, on the section of the form that asks if the "pain [is] related to eating of certain foods," the med tech marked "no." Munson was referred to see a physician, and he saw Dr. Fuentes two days later (Doc. 138-12, p. 13; Doc. 144-1, p. 2; Doc. 250-2, pp. 10–12, 31–33, 45–46). Munson complained of left-sided abdominal pain for the past six to eight months and said that he had not had a solid bowel movement in about two months and he went to the bathroom six to eight times per day. There is no mention in the medical record of a concern about soy. Dr. Fuentes said her evaluation was "largely unremarkable" with the exception of "minimal tenderness in [Munson's] abdomen" (Doc. 144-1, p. 2). Dr. Fuentes's assessment was abdominal pain but she was unsure of the potential cause. In light of Munson's previously elevated H. pylori levels in 2007, Dr. Fuentes ordered an H. pylori test. And based on his reports of frequent diarrhea, she prescribed him Bentyl, which she explained was an antispasmodic that relieves abdominal pain and is traditionally used for individuals with irritable bowel, and Tylenol for pain. The H. pylori results came back negative.

Dr. Magid Fahim saw Munson for the first time on October 30, 2009 at his regularly scheduled clinic appointments (Doc. 138-1, p. 1; Doc. 138-12, p. 22; Doc. 138-13, p. 1; Doc. 250-3, pp. 9–11). Dr. Fahim noted, in pertinent part, that Munson's abdomen was soft and he had flaccid bowel sounds. He does not recall Munson complaining about diarrhea,

and there is no note of it in the record, but Dr. Fahim prescribed Imodium and ordered a follow-up rectal exam in three weeks, which he says suggests that Munson had some degree of abdominal or gastrointestinal complaints. However, there is no mention in the medical record of a concern about soy.

That follow-up appointment occurred on November 30, 2009 (Doc. 138-1, p. 1; Doc. 138-13, p. 3; Doc. 250-3, pp. 11–13). Munson complained of abdominal cramping and diarrhea. There is no mention in the medical record of a concern about soy. He had normal bowel sounds, with some mild tenderness in the area of his lower abdomen. Dr. Fahim did a rectal exam and there was bleeding but no external hemorrhoids. Dr. Fahim suspected Munson may have irritable bowel syndrome ("IBS"). He ordered Munson to take Metamucil one to two times per day, which he explained would increase Munson's fiber intake and regulate the bowel a bit better, which could slow down diarrhea and relieve any constipation. He referred Munson for a sigmoidoscopy, which is an internal examination through the rectum of the large intestine and part of the colon,[5]  to determine if Munson had IBS.

Dr. Fahim followed-up with Munson on December 28, 2009 (Doc. 138-1, p. 2; Doc. 138-13, p. 10; Doc. 250-3, pp. 13–14). Dr. Fahim still believed that Munson may have IBS,

---

[5] A sigmoidoscopy is a procedure in which a thin flexible tube with a camera at the end is used to look at the rectum and the lower part of the colon, the sigmoid colon. A colonoscopy, in contrast, is used to look at the entire colon. A sigmoidoscopy is less invasive than a colonoscopy, bowel prep is less complicated and sedation is usually not needed. CLEVELAND CLINIC, *Flexible Sigmoidoscopy*, https://my.clevelandclinic.org/health/diagnostics/4953-flexible-sigmoidoscopy (last visited Sept. 22, 2021).

so he put Munson on Prednisone, at 20mg per day for three months, for any bowel inflammation. The sigmoidoscopy had not yet been performed due to a change in the doctor that performed it (*see* Doc. 138-13, p. 4), so Dr. Fahim reordered it (*Id.* at p. 10). Dr. Fahim also continued Munson's prescription for Metamucil for three months. There is no mention in the medical record of a concern about soy.

On January 14, 2010, Munson saw a physician (whose name is not clear from the records) about his stomach issues (Doc. 138-13, p. 12; *see also id.* at pp. 13, 14). Like Dr. Fahim, the physician ordered a sigmoidoscopy, as well as stool testing and celiac testing. There is no mention of soy in this medical note. Likewise, a January 22, 2010 note from Munson's regularly scheduled clinic appointments with Dr. Fahim does not mention anything about abdominal pain or concerns about soy (Doc. 138-1, p. 2; Doc. 138-13, pp. 15–16; Doc. 250-3, pp. 14–16).

On February 10, 2010, at sick call with a med tech, Munson complained about pain in his lower stomach on the right side with diarrhea (Doc. 138-13, p. 18). The med tech indicated that the pain was related to eating certain foods, namely "all state food." There is no specific reference to soy. On February 17th, the Director of Nursing made a note in Munson's medical record that she responded to his grievances in which he complained about "soy diet religious diet does not have enough fresh fruits" (Doc. 138-13, p. 20). She wrote "neither diet is a medical issue. [Doctors] teaching offender that his meds and other disease process may be causing his problems" From what the Court can tell, this may be the first time that the word "soy" appears in the medical records. In late February, Munson saw the physician who had previously ordered stool testing and celiac testing in

January (*Id.* at p. 21). Both of those tests came back negative (*Id.* at pp. 13, 14). The sigmoidoscopy was performed and the physician noted, "mucuso appears hyperemic" (*Id.* at p. 21).[6] He suggested a colonoscopy, for which Dr. Fahim sought approval (*see* Doc. 138-13, p. 23; Doc. 138-14, p. 18). Dr. Fahim's request was initially denied in early March 2010, but by the end of the month, Munson was approved for an endoscopy ("EGD")[7] and a colonoscopy (Doc. 138-13, p. 22; Doc. 138-14, p. 3; Doc. 250-3 pp. 17–18).

On April 19, 2010, Dr. Fahim saw Munson for his regularly scheduled clinic appointments (Doc. 138-1, p. 3; Doc. 138-14, pp. 14–15). Dr. Fahim also ordered suppositories and continued Munson's Prednisone while he waited for his colonoscopy. Three days later, Munson received an upper endoscopy and colonoscopy, both of which came back normal with no signs of IBS, ulcers, or any other significant abnormality (Doc. 138-1, p. 3; Doc. 138-14, p. 18; Doc. 250-3, pp. 19–20).

On May 24, 2010, Dr. Fahim informed Munson that his colonoscopy and endoscopy were normal (Doc. 138-1, p. 3; Doc. 138-15, p. 2; Doc. 250-3, pp. 20–21). Dr. Fahim also examined Munson and noted his abdomen was soft with normal bowel

---

[6] This same finding was characterized elsewhere in the medical records as "mucosal erythema," (Doc. 138-13, p. 23). Mucosal erythema means the membrane lining of the digestive tract is red. It is a sign that an underlying condition or irritation has caused inflammation, which has increased blood flow to the mucosa and made it red. HEALTHLINE, *What Is Erythematous Mucosa and How Is It Treated?*, https://www.healthline.com/health/erythematous-mucosa (last visited Sept. 22, 2021).

[7] The technical name for an endoscopy is esophagogastroduodenoscopy, but it is also known as an upper endoscopy or simply and EGD. It is a procedure used to examine your upper digestive tract, including the esophagus (food pipe), stomach, and the first part of the small intestine (duodenum). It is commonly used to help find the cause of symptoms such as persistent heartburn and difficulty swallowing (dysphagia) and to identify problems such as GERD, ulcers, celiac disease, and Crohn's disease. CLEVELAND CLINIC, *Upper Endoscopy*, https://my.clevelandclinic.org/health/treatments/4957-upper-endoscopy-procedure (last visited Sept. 22, 2021).

sounds and no reported tenderness. Dr. Fahim ordered a six-month prescription of Metamucil and Imodium to help stabilize Munson's gastrointestinal complaints and tapered off the Prednisone. There is no mention of concerns about soy but a nurse memorialized as much four days prior (Doc. 138-15, p. 1).

Munson told a medical technician on June 28, 2010 that he was having stomach pains on his *lower* right side and constant diarrhea, which he thought was related to soy (Doc. 138-15, p. 6). Dr. Fuentes saw Munson two days later (Doc. 138-15, p. 8). This was the first time Munson had complained to Dr. Fuentes about his stomach in nine months (since September 2009) (*see* Doc. 138-12, p. 13; Doc. 138-13, p. 2; Doc. 144-1, pp. 2–3; Doc. 250-2, pp. 12–13). Munson said he had pain on the *upper* right side of his abdomen for four months (as opposed to the left side at the appointment in September 2009) (Doc. 138-15, p. 8; Doc. 138-16, p. 1; Doc. 144-1, p. 3; Doc. 250-2, pp. 13–18). Munson reported no vomiting or change in bowel habits and no acid reflux symptoms. Dr. Fuentes found no signs of tenderness or indication of abdominal masses. She also reviewed the results of Munson's previous blood work and the EGD. She assessed Munson had unspecified abdominal pain with a questionable cause. In light of the previous favorable response to Bentyl, Dr. Fuentes ordered Bentyl for five days, a panel of blood tests, and a follow-up in two weeks for the results.

During a regularly scheduled clinic visit on July 28, 2010, Dr. Fahim continued Munson's prescription for Metamucil for five months and also ordered Prilosec for 45 days (Doc. 138-1, p. 3; Doc. 138-16, pp. 9-10; Doc. 250-3, pp. 23–24). Three months later during the next clinic visit, Dr. Fahim once again continued Munson's prescription for

Metamucil based on Munson's report of improved symptoms (Doc. 138-1, pp. 3–4; Doc. 138-16, p. 20; Doc. 250-3, pp. 27–28).

On December 17, 2010, Munson complained to a nurse of a stomachache and diarrhea (Doc. 138-17, p. 8). He said he had 10 to 15 bowel movements per day and eating "soy foods" is what precipitated the diarrhea. Munson saw Dr. Fahim a week and a half later on December 28th during his regularly scheduled clinic visits (Doc. 138-1, p. 3; Doc. 138-17, p. 9). Given Munson's prior positive reaction to Metamucil, Dr. Fahim continued the prescription for six months but increased the amount. A nurse practitioner saw Munson five days later on January 2, 2011, where he complained of "constant diarrhea [with] cramping" and "claim[ed] it is due to 'soy'" (Doc. 138-17, p. 10). She further noted that Munson told her he "stopped having [symptoms] when soy [discontinued] then resumed [symptoms] when soy resumed." She wrote that she planned to "discuss with Dr. Fahim possible dietary order." A new note from the nurse practitioner the following day states, "discussed diet alternative [with] Dr. Fahim. There is no diet alternative [without] soy" (*Id.* at p. 11). When Dr. Fahim was asked about this conversation at a deposition nearly ten years later, he did not remember it (Doc. 250-3, p. 27).

Dr. Fahim saw Munson on January 24, 2011 for his regularly scheduled clinic visits and noted that his abdomen was soft, non-tender, and without any abnormality (Doc. 138-1, p. 4; Doc. 138-17, p. 16; Doc. 250-3, pp. 27–28).

On April 1, 2011, Munson saw University of Chicago Hospital ("UIC") infectious disease specialist, Dr. Mahesh Patel, for his initial ▇▇ telemedicine clinic appointment (Doc. 138-18, pp. 5–9). Dr. Patel noted that Munson reported "some loose stools in the

recent past that have improved a bit with decrease in soy intake." Dr. Patel did not think

the diarrhea was caused by the ███ medications based on Munson's report that

decreasing his soy intake helped. He advised Munson to consider taking Imodium as

needed, but Munson said he wanted to continue taking Metamucil.

Dr. Fahim's last visit with Munson was four weeks later on April 26th (Doc. 138-1, p. 4; Doc. 138-18, p. 16; Doc. 250-3, pp. 29–31, 40–41). Munson self-reported that his diarrhea was improved. Dr. Fahim's assessment was "controlled diarrhea." He continued Munson's prescription for Metamucil for one year and instructed him to follow-up as needed.

Dr. Fahim testified that during the time he saw Munson, Munson's bloodwork was inconsistent with a soy allergy. Specifically, he explained that at least 15 lab tests showed that Munson had a normal level of eosinophils,[8] but a person having an allergic reaction would have eosinophils out of range (Doc. 250-3, pp. 33–34, 39–40).

On June 30, 2011, Munson told UIC infectious disease specialist Dr. Patel, that his loose stool was improved with Metamucil (Doc. 138-18, pp. 23–24; Doc. 138-19, pp. 1–2). Munson saw Dr. Fuentes on September 12, 2011 (Doc. 138-20, p. 2). This was the first time Munson had complained to Dr. Fuentes about abdominal pain in over a year, since June 2010, even though he had seen Dr. Fuentes during this time for other conditions (*see* Doc. 138-17, p. 19; Doc. 138-19, p. 5; Doc. 250-2, pp. 19–22). Dr. Fuentes noted that Munson

---

[8] *See* Doc. 138-4, p. 2; Doc. 138-5, p. 8; 138-6, p. 6; Doc. 138-8, pp. 5, 16; Doc. 138-10, pp. 5, 10; Doc. 138-11, pp. 4, 15; Doc. 138-12, p. 5; Doc. 138-13, p. 6; Doc. 138-14, pp. 7, 10 ; Doc. 138-16, pp. 5, 17; Doc. 138-17, p. 14; Doc. 138-18, pp. 4, 13, 18; Doc. 138-19, p. 14; Doc. 138-20, pp. 3, 17; Doc. 138-21, pp. 9, 21; Doc. 138-22, p. 18.

complained of abdominal pain for three years and "pain whenever he eats soy products" (Doc. 138-20, p. 2; Doc. 250-2, pp. 23–24, 45–46). He did not report any vomiting or diarrhea. Dr. Fuentes performed an abdominal examination that was normal. Her assessment was abdominal pain or an unknown cause. Noting a history of H. pylori, which can be recurrent, Dr. Fuentes ordered an H. pylori test and a follow up in one month. Her notes do not indicate that Munson asked for a soy-free diet, which she assumed meant he did not mention or request soy-free meals. Dr. Fuentes continued to see Munson over the course of the next three years for other issues; Munson did not complain to her again of abdominal pain or an alleged soy allergy. (*see* Doc. 138-20, pp. 11–12; Doc. 138-21, pp. 8, 16).

Dr. Fuentes testified that she found Munson's subjective symptoms inconsistent with a soy allergy as he did not present with a rash, hives, tingling or pain in his mouth, tongue, throat, or stomach, or vomiting (Doc. 144-1, p. 5; Doc. 250-2, pp. 31–34, 45–48). Furthermore, in her seven years at Menard treating a population of approximately 3,000 inmates, Dr. Fuentes could only remember one time a patient had an issue with soy, indicating to her that this was a very rare issue for the food provided to the inmates.

Additionally, commissary records show that Munson frequently purchased foods such as tortillas, refried beans, cheese dips, Little Debbie snack cakes, cookies, rice, ramen noodles, and chips (Doc. 138-23; Doc. 138-24). Munson testified that none of the foods he bought at the commissary gave him stomach problems (Doc. 130-1, pp. 32–34, 39). However, according to Dr. Fuentes and Dr. Feinerman, most of the items in commissary contain soy (Doc. 250-1, pp. 78–82; Doc. 250-2, pp. 34, 47). Specifically, Dr. Fuentes said

she would expect soy to be present in items such as potato chips, cereal, ramen noodles, packaged sweets, and canned foods and dips (Doc. 144-1, p. 6). And if Munson truly had a soy allergy or intolerance, the doctors would have expected him to have some form of a reaction when eating these foods (Doc. 144-1, p. 6; *see* Doc. 250-1, pp. 78–82). Dr. Feinerman opined that Munson's commissary purchases suggested he did not have a soy allergy or intolerance (Doc. 250-1, pp. 78–82).

On September 22, 2011, Munson was evaluated by UIC infectious disease specialist, Dr. Jeremy Young (Doc. 138-20, pp. 7–9). Dr. Young noted in pertinent part that Munson "insists that the chronic diarrhea he is experiencing is due to the soy diet in the IDOC system." Munson asked for soy allergy testing and a soy-free diet. Dr. Young told Munson this would have to be the decision of the IDOC medical staff. Elsewhere in the note, Dr. Young wrote that Munson "is adamant that [his loose stools are] from the soy in his diet and not the fact that he is on a ███████████████████████ ███████" but Dr. Young deferred any management of the diarrhea to the IDOC medical staff. Following this appointment, Munson was referred to see a physician at Menard (*see* Doc. 138-20, p. 6). He saw Dr. Shepherd on September 27th, but the notes from that visit are largely illegible (*Id.* at p. 13).

On October 20, 2011, Munson saw UIC infectious disease specialist Dr. Young who noted that Munson "[did] not have as many GI symptoms" since they switched one of his ████ medications the previous month (he switched from ███████████████████) (Doc. 138-20, pp. 7–8, 20–22).

Munson continued to complain about abdominal issues that he attributed to soy

for the next several years (Doc. 138-21, pp. 5, 12; Doc. 258-6; Doc. 258-7; Doc. 258-3). Then in 2016, Munson switched from the general diet to a Kosher diet (Doc. 258-1). The Kosher diet consists of pre-packaged meals that are purchased from an outside company (Doc. 253-3, p. 17). Munson says this diet was the closest option he could find to fit his Buddhist beliefs and provide enough non-soy food to keep him healthy (Doc. 258-1). On March 6, 2017, Munson reported to Dr. Patel at UIC that his diarrhea was "'non existent' as long as he eats a Kosher diet," which he claimed was "soy free" (Doc. 250-4, pp. 2, 3). However, according to James Keller, the IDOC Food Service Administrator, the Kosher meals also include soy but he was unable to say how much (Doc. 253-3, p. 17). On March 17, 2017, Munson was tested for a soy allergy and there was "no significant level detected" (Doc. 250-4, p. 11).[9]

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party always bears the initial responsibility of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). The manner in which this showing can be made depends upon which party will bear the burden of proof on the challenged claim(s) at trial. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). In cases such

---

[9] Munson took a blood test called an ImmunoCAP test, which measures your immune system's response to soy by measuring the amount of immunoglobulin E (IgE) antibodies to soy in your bloodstream. MAYO CLINIC, *Soy Allergy*, https://www.mayoclinic.org/diseases-conditions/soy-allergy/diagnosis-treatment/drc-20377807 (last visited Sept. 24, 2021).

as this one, where the burden of proof at trial rests on the plaintiff, the defendant can make its initial showing on summary judgment in one of two ways. *Id.*; *see Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016); *Modrowski*, 712 F.3d at 1168. First, the defendant can show that there is an absence of evidence—meaning a complete failure of proof—supporting an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 331; *Hummel*, 817 F.3d at 1016. Second, the defendant can present affirmative evidence that negates an essential element of the plaintiff's claim. *Celotex*, 477 U.S. at 331; *Hummel*, 817 F.3d at 1016.

If the movant fails to carry its initial responsibility, the motion should be denied. *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). On the other hand, if the movant does carry its initial responsibility, the burden shifts to the non-moving party to "inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 455 (7th Cir. 2018) (citation omitted). The non-moving party cannot rely on allegations in the pleadings but rather must come forward with evidentiary materials that set forth "specific facts showing that there is a *genuine issue for trial*" on all essential elements of his case. *Celotex*, 477 U.S. at 324; *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009); *see also* FED. R. CIV. P. 56(c)(1). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In deciding a motion for summary judgment, the court "must view all the

evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

<u>ANALYSIS</u>

### A. DELIBERATE INDIFFERENCE

The Eighth Amendment's proscription against cruel and unusual punishment creates an obligation for prison officials to provide inmates with adequate medical care. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Farmer v. Brennan,* 511 U.S. 825, 832, (1994)). Evaluating whether the Eighth Amendment has been violated in the prison medical context involves a two-prong analysis. The court first looks at whether the plaintiff suffered from an objectively serious medical condition and, second, whether the "prison officials acted with a sufficiently culpable state of mind," namely deliberate indifference. *E.g., Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). In applying this test, the court "look[s] at the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to serious medical needs." *Petties v. Carter*, 836 F.3d 722, 728–29 (7th Cir. 2016).

The medical Defendants do not argue that Plaintiff's stomach pain and diarrhea did not constitute an objectively serious medical need (*see* Doc. 250). Consequently, the question for the Court is whether Defendants acted with a sufficiently culpable state of mind. A prison official exhibits deliberate indifference when they know of a serious risk to the prisoner's health exists but they consciously disregard that risk. *Holloway*, 700 F.3d at 1073 (citation omitted). "The standard is a subjective one: The defendant must know

facts from which he could infer that a substantial risk of serious harm exists and he must actually draw the inference." *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017) (quoting *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016)). The deliberate indifference standard "requires more than negligence and it approaches intentional wrongdoing." *Holloway*, 700 F.3d at 1073. It is "essentially a criminal recklessness standard, that is, ignoring a known risk." *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013) (citation omitted).

In the context of medical professionals, the deliberate indifference standard has been described as the "professional judgment standard." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Treatment decisions are "presumptively valid" and entitled to deference so long as they are based on professional judgment—meaning they are fact-based with respect to the particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm, and the efficacy of available treatments—and do not go against accepted professional standards. *Johnson v. Rimmer*, 936 F.3d 695, 707 (7th Cir. 2019) (citation omitted); *Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017); *Roe v. Elyea*, 631 F.3d 843, 859 (7th Cir. 2011). A medical professional may be held to have displayed deliberate indifference if the treatment decision was "blatantly inappropriate" even to a layperson, *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (a jury can infer deliberate indifference when "a risk from a particular course of medical treatment (or lack thereof) is obvious."), or there is evidence that the treatment decision was "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Petties*, 836 F.3d at 729; *see also Pyles*, 771

F.3d at 409 ("A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances'") (citation omitted).

### 1. Dr. Adrian Feinerman

Munson began complaining to Dr. Feinerman about stomach pain in 2007. Dr. Feinerman responded to Munson's complaints about stomach pain by testing him for H. pylori. When those results came back in the normal range, Dr. Feinerman then ordered an ultrasound of Munson's abdomen. When the ultrasound revealed gallstones, Dr. Feinerman referred Munson for a surgical evaluation. Based on the surgeon's recommendation, Dr. Feinerman obtained approval for Munson to have his gallbladder removed. Following surgery, Munson told Dr. Feinerman he felt better. A couple months later, in September 2007, Munson once again reported stomach pains, which Dr. Feinerman attributed to a medication Plaintiff had been mistakenly given. There is no indication in the medical records currently before the Court that Munson made any further complaints to Dr. Feinerman about stomach pain for the rest of 2007. Likewise, there is no indication in the medical records currently before the Court that Munson made any further complaints to Dr. Feinerman, or any other practitioner for that matter, about stomach pain for the entirety of 2008 and most of 2009 (*see* Doc. 138-8, Doc. 138-9, Doc. 138-10, Doc. 138-11, Doc. 138-12).

Likewise, there is no indication in the medical records that Munson ever complained to Dr. Feinerman about the soy in his diet or requested a soy-free diet from him. Dr. Feinerman testified that he had no recollection of ever talking with Munson

about a soy allergy or a soy-free diet. Furthermore, Dr. Feinerman testified that he never saw any signs or symptoms that suggested Munson had a soy allergy or intolerance, and he never saw a medical need to test Munson for a soy allergy (Doc. 250-1, pp. 70, 75–76).

For his part, Munson suggests that Dr. Feinerman was aware of his ongoing stomach issues and concerns about soy because he submitted medical request slips stating as much in September 2009 while Dr. Feinerman was still the Medical Director at Menard (Doc. 258, p. 11). However, Munson did not submit any evidence from which it can be inferred that Dr. Feinerman ever saw those request slips (*e.g.*, evidence that it was Dr. Feinerman's responsibility to personally review incoming medical request slips) and they were submitted months after Dr. Feinerman saw Munson for the last time (*see* Doc. 258).

Simply put, there is a complete dearth of evidence that Dr. Feinerman ever knew about Munson's ongoing stomach issues or his concerns that soy was the cause. Consequently, there is absolutely no basis for holding Dr. Feinerman liable for deliberate indifference based on his failure to test Munson for a soy allergy or intolerance or to place him on a soy-free diet. In fact, based on the record currently before the Court, no reasonable jury could find Dr. Feinerman was deliberately indifferent to Munson's stomach issues for any reason. Dr. Feinerman is thus entitled to summary judgment and the motion is granted as to him.

### 2.  Dr. Fe Fuentes

Dr. Fuentes treated Plaintiff for his stomach issues on three occasions: in September 2009, June 2010, and September 2011. Dr. Fuentes asserts that Munson did not

mention anything about soy at the first two appointments but acknowledges that he did bring up his concern about soy causing his stomach issues at the third appointment. But a reasonable jury could conclude that Dr. Fuentes knew about Munson's soy concern sooner than she claims given that the first appointment came on the heels of Munson submitting two request slips complaining of stomach pain that he attributed to soy and the second appointment followed a sick call visit at which Munson voiced his concern about soy (Doc. 138-15, p. 6).

But even if the Court assumes Dr. Fuentes knew about Munson's concern with soy, no reasonable jury could find she was deliberately indifferent. The undisputed evidence is that she evaluated and treated Munson for his symptoms. She ran H. pylori tests and other blood tests and prescribed Tylenol for his pain and Bentyl to try and relieve his diarrhea. The medical records and Dr. Fuentes's testimony demonstrate that her treatment decisions were based on her medical judgment after considering Munson's reported symptoms, his prior medical history, the objective findings of her physical exams, and the results of his previous testing. Furthermore, none of the physicians who saw Munson for his stomach issues from 2007 through 2011 thought it was necessary to investigate or treat for a soy allergy, which shows that Dr. Fuentes's decision *did not* amount to a departure from accepted medical practice. And it certainly did not amount to a *substantial departure*. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014) (no reasonable jury could find a doctor's decision not to order an MRI constituted a significant departure from accepted professional norms when that decision was "implicitly endorsed by every other doctor who examined Mr. Pyles" and also declined to order an MRI).

Munson nevertheless contends that Dr. Fuentes was deliberately indifferent because, he firmly believed soy was the cause of his stomach pain and diarrhea, and she did not test him for a soy allergy or order a soy-free diet (Doc. 258, p. 12). But "an inmate is not entitled to demand specific care and is not entitled to the best care possible . . . ." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Dr. Fuentes was not required by the Eighth Amendment to indulge Munson's speculative self-diagnosis of a soy allergy when her own medical judgment was that his symptoms were not consistent with a soy allergy.[10] Munson had to offer evidence that Dr. Fuentes's decision not to investigate or offer treatment for a soy allergy was so far outside the bounds of professional judgment that no reasonable physician would make the same decision. *Thomas v. Martija*, 991 F.3d 763, 772–73 (7th Cir. 2021). He did not do so (*see* Doc. 258). Munson's difference of opinion as to what ailed him and what diagnostic tests and treatment were appropriate is not enough to survive summary judgment. *Pyles*, 771 F.3d at 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor . . . about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.").

For these reasons, Dr. Fuentes is entitled to summary judgment.

---

[10] *See Thomas v. Martija*, 991 F.3d 763, 772–73 (7th Cir. 2021) (citation omitted) (affirming district court's decision that no reasonable jury could find doctor deliberately indifferent when he chose to continue plaintiff's Flomax prescription, despite plaintiff's subjective belief that it was ineffective for him, because the prescription, itself, was widely accepted treatment for an enlarged prostate and several doctors believed it was the proper course of treatment); *Tuduj v. Lawrence*, 829 Fed. Appx. 120, 124 (7th Cir. 2020) (doctors were not deliberately indifferent when they did not prescribe dimethyl sulfoxide for the plaintiff's self-diagnosed shingles infection when no doctor had ever diagnosed him with shingles); *Fitzgerald v. Greer*, 324 F. App'x 510 (7th Cir. 2009) (physician's treatment of inmate with ibuprofen, a drug that could aggravate gastrointestinal problems, did not constitute deliberate indifference, absent medical evidence to corroborate what appeared to be a self-diagnosis of stomach ulcers).

### 3.  Dr. Magid Fahim

Dr. Fahim treated Munson on a number of occasions in 2009, 2010, and 2011. Dr. Fahim asserts that Munson never mentioned his concerns about soy (Doc. 250, p. 18). While none of Dr. Fahim's notes mention soy, there are plenty of other references to soy throughout the medical records, including notes from sick call visits that immediately preceded Dr. Fahim's visits with Munson (*e.g.,* Doc. 138-15, p. 1; Doc. 138-17, pp. 8, 10, 11; Doc. 138-18, pp. 5–9). But even if the Court assumes Dr. Fahim knew about Munson's concern with soy, however, no reasonable jury could find he was deliberately indifferent. The undisputed evidence is that he evaluated and treated Munson every single time he complained about stomach issues. Dr. Fahim performed a rectal exam, referred Munson for a sigmoidoscopy, an endoscope, and a colonoscopy, and prescribed Imodium, Metamucil, Predisone, suppositories, and Prilosec. And when Munson self-reported that his diarrhea was improved with the Metamucil, Dr. Fahim continued to prescribe it. The medical records and Dr. Fahim's testimony demonstrate that his treatment decisions were based on his medical judgment after considering Munson's reported symptoms, his prior medical history, the objective findings of his physical exams, the results of his previous testing, and Munson's own reports on the effectiveness of the medications.

Once again, Munson nevertheless contends that Dr. Fahim was deliberately indifferent because Fahim did not test him for a soy allergy or order a soy-free diet (Doc. 258, pp. 12–13). For the same reasons explained above with respect to Dr. Fuentes, Munson's contention is insufficient to establish deliberate indifference. He offered no expert testimony that Dr. Fahim's decision not to investigate or offer treatment for a soy

allergy was so far outside the bounds of professional judgment that no reasonable physician would make the same decision.

For these reasons, Dr. Fahim is entitled to summary judgment.

**B.  RLUIPA & FIRST AMENDMENT CLAIMS**

Both the First Amendment and RLUIPA "use the substantial burden test to determine whether a violation of a plaintiff's religious free exercise rights has occurred." *Nelson v. Miller*, 570 F.3d 868, 877 (7th Cir. 2009); *accord Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006). *See also Jones v. Carter*, 915 F.3d 1147, 1148–49 (7th Cir. 2019) (RLUIPA prohibits prisons from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that imposition of the burden on that inmate "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2))); *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (on a § 1983 claim for violation of the First Amendment right to the free exercise of religion, the plaintiff "had to submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably placed a substantial burden on his religious practices."). "The Supreme Court has explained that a substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (citing *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981)). It is well-established that "[w]hen the state forces a prisoner to choose between adequate nutrition and religious practice, it is imposing a substantial burden on his religious practice . . . ." *Jones*, 915 F.3d at 1150 (citing *Thompson*,

809 F.3d at 380).

Here, it is undisputed that Munson's sincere Buddhist beliefs require him to refrain from eating meat. It is also undisputed that the lacto-ovo-vegetarian diet offered by the IDOC is consistent with Munson's religious beliefs and initially fulfilled his religious needs. Munson, however, came to believe that consuming the soy-based foods provided as part of the lacto-ovo-vegetarian diet caused him severe abdominal pain and diarrhea. He claims that a soy-free lacto-ovo-vegetarian diet is medically necessary and the refusal of prison officials to provide him with such a diet placed a substantial burden on his religious exercise (Doc. 258). Specifically, he contends that if he wanted to remain on his religious diet, he had to choose between consuming the soy-based foods and suffering the gastrointestinal consequences or avoiding the soy items and risking insufficient caloric intake. His other choice was to remove himself from the religious diet and go back to eating meat in order to ensure sufficient nutrition without consuming as much soy, which is what he ultimately chose. He asserts that he wants to return to the full exercise of his Buddhist faith but cannot until the IDOC agrees to provide him with a soy-free version of the lacto-ovo-vegetarian diet (Doc. 258, p. 16).

Defendants, however, argue that not offering Munson a soy-free diet has not substantially burdened his religious exercise because there is no evidence that he has a soy allergy that makes the lacto-ovo-vegetarian diet inappropriate for him. The Court agrees. First and foremost, Munson was tested for a soy allergy in March 2017 and there was no significant level of soy antibodies detected (Doc. 250-4, p. 1). Second, after Munson switched back to the general diet in 2009, he still complained of "constant"

diarrhea, (*e.g.*, Doc. 138-15, p. 16), even though he testified that he was only served soy-based food items "on occasion" (Doc. 258-1). Additionally, Munson frequently consumed other foods that contain soy but he testified those foods did not cause him any abdominal pain or diarrhea. Specifically, he frequently purchased food from the commissary, and it is undisputed that most of the foods available for purchase at the commissary, and particularly many of the foods that Munson bought, contain soy. But he testified that none of the foods he bought at the commissary gave him stomach problems. Since 2016, Munson has been receiving Kosher diet trays. It is undisputed that these trays also contain soy. Yet Munson told a physician that he had no stomach pain or diarrhea since switching to the Kosher diet.

Given this evidence, no reasonable jury could conclude that Munson had a soy allergy or intolerance that made the regular lacto-ovo-vegetarian diet inappropriate for him or that without a soy-free, lacto-ovo-vegetarian diet, Munson was forced to choose between foregoing adequate nutrition or violating a central tenant of his religion. Consequently, Defendants Keller and Kohn are entitled to summary judgment on Munson's First Amendment and RLUIPA claims. Defendant Deanna Brookhart is as well, even though the summary judgment motion was filed only on behalf of Keller and Kohn (*see* Doc. 254). Brookhart was sued in her official capacity as the acting Warden of Lawrence Correctional Center as the target of Munson's First Amendment and RLUIPA claims, along with Keller and Kohn in their official capacities (Doc. 217). It was redundant (and unnecessary) to sue all three officials in their official capacities on the same theory of liability because "[a]n official capacity suit is tantamount to a claim against the

governmental entity itself." *Klebanowski v. Sheahan,* 540 F.3d 633, 637 (7th Cit. 2008) (quoting *Guzman v. Sheahan,* 495 F.3d 852, 856 (7th Cir. 2007)). So whether Munson sued only one of them in their official capacity or all three, it was just another way of pleading an action against the IDOC. Therefore, because Keller and Kohn are entitled to summary judgment, then Brookhart necessarily is too.

## CONCLUSION

The motions for summary judgment (Docs. 248 and 254) are **GRANTED.** Summary judgment is **GRANTED** as to Defendants Magid Fahim, Adrian Feinerman, Fe Fuentes, James Keller, Jeremy Kohn, and Deanna Brookhart. Plaintiff's claims are **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: September 29, 2021**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**